## C. P IAUKEA *vs.* C. B. COOPER, *et al.*

### October 24, 1904.

*Injunction.—Jurisdiction:* If a board of health interrupts private rights, the authority of a court to interfere by injunction does not depend on the question whether the board acted in bad faith, but on the question whether it has overstepped its authority.

*Same.—Political Candidacy.—Business Interest:* Running for election to a salaried official position is a lawful business enterprise, involving a business interest, which may be protected by injunction.

*Board of Health.—Deprivation of Liberty:* The authority of the Hawaiian Board of Health to restrain the liberty of the inmates of the leper settlement and the freedom of intercourse of others with them, is limited

to the necessity of protecting the rest of the community from contagion, and of providing for the well-being of such inmates.

*The Voting Franchise.*—*Rights to Political Instruction:* The grant of the franchise to the inmates of the leper settlement, involves a reasonable opportunity on their part of receiving instruction on political issues.

In Equity: Bill for Injunction.

W. A. Kinney and C. A. Galbraith, Attorneys for Complainant.

Lorrin Andrews, Attorney-General of the Territory, Attorney for Defendants.

DOLE, J. This is an application for a temporary injunction to restrain the Board of Health from interfering with the complainant's intention of addressing the voters of the Leper Settlement on the Island of Molokai, as a candidate for election as Democratic Delegate to Congress. The Board of Health admit that they intend to prevent the complainant from carrying out his intention on the ground that such discussions in the past have caused discontent and unrest among the inmates of the settlement, thereby adding to the difficulties of administering the affairs of the settlement.

The complainant alleges that the officials administering the affairs of the settlement are Republicans and have been influenced by political and partizan reasons in thus refusing complainant the privilege of addressing the voters of the settlement.

I do not consider that the charge of partizanship on the part of the Board of Health and a want of good faith, is especially pertinent to the issue in this case. If the Board of Health, acting in perfect good faith, overstep their authority, there is just as much authority in a federal court to interfere as if they had overstepped their authority in bad faith, and I feel as if I could leave out the allegations of political animus. In my mind, the case has narrowed down to the matter of the complainant's right to conduct his campaign before the voters of the settlement as well as in other places, and it is only proper for an in-

junction, if it is at all, in that it is his business which he has adopted—the enterprise of becoming a candidate for an office which pays an adequate salary and emoluments of other kinds. It is only in that it becomes an interest, a business interest, that it can be considered by this court, and I think that that brings it within the class of cases for which injunctions may issue, because he has gone into this matter as an enterprise, although it is a political enterprise in a sense, still it is a business enterprise. He has invested money in it, and has acquired rights in it, and the question of his right to considerable salary and other emoluments rests upon his success in this campaign. That, to me, is the kernel of this question. There are other considerations besides this which enhance the importance of the case, and enforce perhaps the strength of that position. For instance, Congress has given to the inmates of the settlement at Molokai the franchise, just as any other American citizens of the United States have it. This inevitably implies the right to hold meetings, to hear candidates, to discuss public matters, to be instructed by others, and to have an opportunity of intelligently making up their minds as to how they shall vote. This is a very important matter. Otherwise, if the settlement is to be shut off from the rest of these Islands, save only as to such influences as it may receive from letters and newspapers, it might be that the several hundred voters in that locality would become a menace, a danger to the public interests of these Islands from ignorance, from want of touch with the rest of the community, from want of instruction as to the issues of elections.

In regard to the power of the court, my authorities, as well as those that have been referred to by Mr. Galbraith, fully recognize that power, even in regard to Boards of Health. I wish to refer on that point to the case of *Rogers v. Barker,* 31 Barb. 447, 451. The action was to restrain the defendants by injunction from proceeding or acting upon certain resolutions passed by them as the Board of Health of a town, for the removal of a dam constructed across a river, as constituting a

nuisance by damming the water and the production of conditions inimical to the public health. The injunction was sustained on appeal, Brown, (J) observing:

"If this Board of Health have authority and jurisdiction to determine the fact of nuisance and to order its suppression and removal, they should be required to state in their adjudication what the nuisance is—whether the dam itself or the waters collected above the dam, and if the latter how much of the structure shall be removed in order to dissipate and disperse the obnoxious waters; and especially should the order or adjudication designate the particular dam or obstruction which they design shall be taken away. * * * The rights of property do not, certainly, depend upon proceedings so vague, indefinite and uncertain as these. * * * If the power asserted in the defendant's resolution really exists, and can be applied to the removal and destruction of property like that described in the complaint in this action, it is a power that must be exercised in subordination to the judicial authority of the State, and subject to be suspended and held in abeyance by order of a court having jurisdiction of the subject, whenever the principal facts upon which its exercise depends are put in controversy and rendered doubtful, until they are established by due process of law."

The case of *Lawton v. Steele,* 152 U. S. 133, is a case relating to a regulation about fisheries. The court said, among other things, with respect to the police power of a State:

"To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words,

its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts."

The case of *Jew Ho v. Williamson,* 103 Fed. Rep. 10, 26, quoted by Mr. Galbraith, is instructive in relation to the issue before this court. Judge Morrow said, among other things:

"This quarantine cannot be continued, by reason of the fact that it is unreasonable, unjust and oppressive, and therefore contrary to the laws limiting the police powers of the State and municipality in such matters; and, second, that it is discriminative in its character, and is contrary to the provisions of the fourteenth amendment of the constitution of the United States." And the court allowed the injunction limiting the quarantine which had already been established by the Board of Health.

The right or authority in this country to deprive the class of people in the settlement of Kalawao and Kalaupapa of their liberty is under the police power and is fully authorized by the law and by precedent, but it is so grievous and such a terrible limitation of the rights of liberty that it is very clear to my mind that it should be limited to the actual necessities of the case. In other words, that such deprivation of liberty should go no further than to protect the community from contagion,— I mean the well community of these Islands, and to provide for the due care and comfort and well-being of the inmates of these settlements. Now, in view of this rule, is the Board of Health called upon to deprive such inmates of the opportunity of meeting candidates for election who wish to address them? If it was a matter which required such persons to go into the middle of the settlement and move among the people it would be perhaps less clear, but whereas, the Board of Health has provided a stockade surrounded by a double fence, separated by a space of eight or ten feet, near the landing, into which they allow visitors who wish to see their friends and communicate with them, and which makes it perfectly safe for such visitors, and the danger of contagion is fully eliminated; according to Dr. Cooper, there must be no reason, on the ground of danger, why

the close custody of that people should be carried so far as to deprive them of the satisfaction and the benefit of hearing candidates discuss political matters pertinent to an election in which they themselves are going to take part. But the doctor says the danger of contagion was not the reason of the refusal of the Board of Health to allow the complainant in this case to visit the settlement, but it was because of the discontent and unrest which has been caused in the past by visits of politicians, and which renders the administration of the affairs of the settlement difficult for a few months afterwards. I think that is very true, and I think it is a difficulty which the Board of Health are reasonable in wanting to avoid. At the same time, we must recognize that the cause of that unrest is the fact that the franchise has been given to the people of the settlement. They have the franchise and these other things; the listening perhaps sometimes, to foolish and unreasonable remarks of candidates, are things that go with it, and cannot be properly shut off.

I believe that the prayer of the petition is reasonable under the circumstances; that the importance is very much greater than appears from a consideration merely of Mr. Iaukea's personal ambitions, because if a decision in this case allowing such a privilege should be confirmed, it would have a bearing on the future political status of that people, recognizing the right of candidates in future elections, to address them, a right that they ought to have and a right and opportunity that this people ought to have of learning about their political duties

I confess the case has been a difficult one to me, and I have listened to the remarks and law on both sides with a great deal of interest, and with a searching desire to find out definitely what the law and what the right in the matter really is. I believe that the prayer of the petition should be allowed and a temporary restraining order issued, and will so order.