[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 190 
When the framers of the act for the establishment of the Metropolitan District had the subject under consideration, they undertook to make available to the district the experience and skill of the then existing police force in the cities of New York and Brooklyn, then in office under the act of April, 1853, by leaving them in office, changing somewhat their designation, and adding to their duties by enlarging their sphere of action. To carry out that design, it was enacted that, from and after the passage of the act, captains of police in New York and Brooklyn should be designated inspectors or captains of police; lieutenants and assistant captains should be designated as sergeants of police, and perform duty concurrently *Page 191 
with the sergeants then in office, until the board should regulate the proper number of such sergeants according to the terms of the act; those who had been designated as police, were thereafter to be designated as patrolmen. The then present wards of those cities were made police precincts within the district, until new ones should be made by the board of police. It was further provided, that the police in the cities of New York and Brooklyn should continue to do duty under laws existing at the time of the passage of the act, and according to the regulations of the departments of New York and Brooklyn, until after the first meeting of the new board of police, when they should hold office and do duty under the provisions of the act thereby enacted.
These provisions alone are, to my mind, quite sufficient, not only to protect the relator from harm in a suit against him for any act done by him which might have been lawfully done by any police or patrolman, but to defend him, in any form, against the charge of being a usurper of the office. This view of the case gathers strength from a subsequent provision giving authority to the board to remove from office any of the present members of the police department of New York and Brooklyn who could not read and write the English language, or who was not a citizen of the United States, or who had not resided within the Metropolitan District during the term of five years.
But it is claimed, that because the relator did not take the oath of office after the passage of the act of the 15th of April, 1857, establishing and providing for the government of the Metropolitan Police District, he was not from that time a legal incumbent of the office, and, therefore, was not entitled to judgment in his favor. This position assumes that he was not an old officer, whose sphere of action had simply been enlarged by the act referred to, but that he was appointed by that act itself, and hence bound to take the oath of office. In support of this position, reference was made to an expression used by a learned judge of this court in the case of The People v.Draper (15 N.Y., 540), involving the constitutionality of that act, in which he said: "If it was a valid organization, the officers *Page 192 
appointed by this bill are not county or city officers, but district officers." The question in that case was, whether the appointment of that force, in the manner specified by the act was in conflict with the Constitution; and if he had said, `under the bill,' instead of `by it,' nothing said by him on that occasion would be referred to as authority in this case. That a just interpretation of all he did say will not justify the conclusion that he regarded the relator as appointed to office by that bill, is, to my mind, quite clear; and, without the aid of that expression, it may as well be said that, for every new duty imposed, either by enlarging his sphere of action or by requiring obedience to a new superior, he must take an oath. Without an unjust interpretation of the expression referred to, there is not, in my judgment, a plausible pretext for saying that, because the Legislature found the relator in office, and left him there, by an unequivocal expression of their design to do so, without taking further notice of him than to change his designation, enlarge his sphere of action, and enjoin obedience to a new superior, he was, by that act, appointed to office or required to take anew his oath of office. It may as well be said that, for every new duty imposed, either by enlarging the jurisdiction of an official incumbent, or requiring his obedience to a new superior, he forfeits the office he has, unless he add, to the obligation of an oath already taken, another, that he will discharge his duty within his enlarged jurisdiction, and render obedience to his new superior.
It was urged that because the relator became by the act an officer of the Metropolitan Police District, and was no longer one of the city of New York alone, he became thereby a different officer, and hence a new one; and was, therefore, bound to take the oath of office. I do not perceive the force of this position. Every office, to whose bailiwick or jurisdiction territory is added, becomes an officer of that territory, and is, in no respect, a new officer.
Unless, therefore, the relator has withdrawn or resigned from the police force, or has been legally dismissed therefrom, he was entitled to be restored to the position in which the law *Page 193 
left him, and where the new board of police found him. That he resigned is not pretended; and it is nowhere to be found in the verdict of the jury that he has withdrawn. But it is insisted that because he and the captain of the old police force, who had been for ten years a captain of that force, under whose command the relator was when the act of 1857 was passed, believing that act to be in conflict with the Constitution, did not recognize the new police board, and refused to act under it until this court should pass upon its constitutionality, this was, per se,
a withdrawal from the force, notwithstanding his captain obeyed all general orders that issued from the commissioners under the act of 1853, while the question as to the constitutionality of the act of 1857 was pending before this court, and in the meantime made daily returns to the chief of police under that act; and that the members of the old force, including the relator, under their old captain, were the only police force on duty in the 14th ward of the city of New York, and did all the police duty of that ward until the 1st of July, 1857: and as soon it was understood that the constitutionality of that act had been determined by this court, that whole force, including the relator, surrendered, and the relator reported himself for duty.
When the act to establish the Metropolitan District was passed, much doubt was entertained as to its constitutionality Eminent members of the legal profession, upon full consideration, differed in opinion as to its validity; and, as we have seen, this court was divided upon that question. I do not refer to this in derogation of the fundamental principle, that "ignorance of the law, which every man is presumed to know, does not afford an excuse," but as a fact in history of which we should avail ourselves in the interpretation of the relator's acts relied upon to demonstrate his withdrawal from the police force. That he was honest in his conviction as to the invalidity of the law we have no reason to doubt; indeed the jury have so far sustained him: that he intended to stand where the act of 1857 left him, there is as little doubt. He was then a policeman of the 14th ward of the city of New York, which *Page 194 
by that act remained a police precinct until new ones should be formed by the board. No new ones were formed: at least the verdict does not show it. He was also, by the act, to do duty according to the regulations of the police department of the city of New York, until after the first meeting of the new board, when they were to do duty under the provisions of the new act. There is no complaint that in his watchfulness over his ward or precinct, he did not do every duty which the law exacted of him, except that while in the performance of that duty, being misled by his own erroneous judgment or the advice of others, or both, he did not recognize the rightful sovereign. This certainly does not prove that he withdrew from the force; but, on the contrary, that he adhered to it. The whole case, then, amounts to this: the Metropolitan District received and was benefited by the police services of the relator, who, during the whole period of his services, is not found to have disobeyed any general or special order of the board of police, or the command of a superior; and notwithstanding he was, during his service, regarded by the board, and treated by them as a patrolman, they now insist that because he did not, while thus serving, recognize the Metropolitan Board of Police as the rightful power and act under it, he was, what? not a present insubordinate, but an absentee who had withdrawn from the force.
There is another ground upon which I think such a defence ought not to prevail. Before this relator sued out his writ the defendants passed a resolution that such of the old force as had not been dismissed in conformity to law, were thereby declared members of the Metropolitan Police of the city of New York, and entitled to duty, and to be duly paid as such. That the relator had not been dismissed in conformity to law, is clear. This resolution, therefore, declares the relator to be a member of the force, and concedes to him the right to do duty and to be paid therefor. It may be said that this resolution was not intended to extend to the relator, because he had been removed, though not in conformity to law. Why then employ the language unless it was intended to include all those *Page 195 
who had not been legally removed? That the point was in the mind of the mover of this resolution is clear beyond a doubt, or a place would not have been provided for those who had not been dismissed except in conformity to law.
But it was urged that because the relator had been an insubordinate in his refusal to recognize the rightful board and act under it, he ought now to be removed, notwithstanding his allegiance to it ever since the decision as to the validity of the law by this court, and hence he should not now be restored. It may be that his erroneous opinion as to the validity of the law ought not to have excused him had he been arraigned for his refusal to recognize and act under the rightful board. But with that question we have nothing to do. Our province is simply to determine whether he was a member of the police force, and if so, whether he has been removed, or has withdrawn therefrom; and although he may now deserve to be removed, he has the right to be heard before the board upon whatever causes of removal may be alleged against him. But if it was competent for this court to consider that question, we should be slow to act in the face of the defendants' resolution of condonation.
I am of opinion that the judgment should be affirmed.
ALLEN, J., concurred in this opinion.
COMSTOCK, J., was also for affirmance of the judgment. It may be conceded (he observed in substance), that the office of patrolman, under the Metropolitan Police act, is not identical with that of policeman under the system superseded by that statute. The difference is a territorial one, the duties being the same. If the office in this sense is to be regarded as a new one, the mode of filling it is not provided for in the Constitution, and the Legislature had power to fill it. The oath of office could also be dispensed with at the pleasure of the Legislature, and the policemen of the old system could be made patrolmen in the new organization without any acceptance or affirmative act on their part. This I think is what *Page 196 
was done. Looking at several provisions of the act I am clear that no oath of office was required, and that these men were transferred to the new force, and so placed in office, by the mere will of the Legislature. They were, therefore, in possession of the office in the same absolute sense in which any person holds an office, who receives and accepts a commission from the appointing power, takes the oath and enters upon the duties. In a word, I do not regard the statute as a mere tender of office to the old policemen, to be accepted or not, and requiring acceptance on their part. The act in the same breath created the office of patrolman, so far as it is new, and transferred to it absolutely a class of incumbents who had filled analogous situations in the former system. This was within the power of the Legislature.
The question before us is, therefore, one of abdication, and not of acceptance, and I am satisfied that there has been no abdication. The relator at all times performed, or was ready to perform, police duty, although he mistook the warrant or authority under which he acted. But that mistake cannot be imputed to him as an intention to retire from the office which he held. He was guilty of insubordination; but while that may be good cause for a removal, it is not resignation.