THE PEOPLE *ex rel.* Cornelius B. Titus *vs.* THE BOARD OF POLICE OF THE METROPOLITAN POLICE DISTRICT.

THE PEOPLE *ex rel.* Henry C. Hope *vs.* THE SAME.

Upon an application for a mandamus to compel the board of police of the Metropolitan Police District to restore the relator to the office of patrolman of the police force, &c., a finding of the jury that since the passage of the act of April 15, 1857, to establish a Metropolitan Police District, the relator entered on another employment inconsistent with his duties as a member of the police force, without stating the nature of the employment, or when the relator was engaged therein, is no defense. MULLIN, J. dissented.

It would be useless, and wrong, to compel the restoration of delinquent officers when it would be the duty of those having authority so to do, immediately to remove them. *Per* LEONARD, J.

It is no part of the duty of the court to uphold an exclusion from office by intendment, when it is not certain that the existing facts would and ought, in right and justice, to produce a judgment of exclusion or removal by the competent authority.

APPEALS from orders made at a special term, denying motions for a mandamus.

*Beebe, Dean & Donohue,* for the relators.

*Brown, Hall & Vanderpoel,* for the respondents.

LEONARD, J. These cases are in all respects similar to the case of Gorman, except that the jury have found in these cases, in addition to the findings in Gorman's case, that the relators, since April 15th, 1857, entered on other employments inconsistent with their duties as members of the police force.

If the jury had found and stated the nature of those employments, so that this court could see that it was the duty of the board of police to remove these relators for the cause found against them by the jury, it would not be proper, within settled principles of law, to direct a mandamus to issue to compel the board of police to restore the relators to office.

It would be useless and wrong to compel the restoration of delinquent officers when it would be the duty of those having the authority so to do, immediately to remove them.

But in these cases the jury have omitted to inform us what was the nature of the inconsistent employments referred to, and when the relators were engaged in such employments. If it was after the defendants had commenced to withhold from the relators the right to exercise the offices in which the act of the legislature of April 15th, 1857, had continued them, such employments are of no moment here. These inconsistent employments may have consisted in observing obedience to the authority of the old board of police, and acting in hostility to the new, during a certain period after the new act was passed. The court of appeals, as well as this court, have decided that this latter cause would be no ground for removing the officers.

Are we then bound to intend that these inconsistent employments were some other than those above supposed, and that they were of such a nature that the least measure of punishment that the board of police could properly inflict would be expulsion or removal from office ? I think not. If the facts, in respect to the employments referred to, are of such a nature that removal from office ought to follow, it will still be within the power of the board to cause it to be immediately done. It is no part of the duty of this court to uphold an exclusion from office by intendment, where we are not certain that the existing facts would and ought, in right and justice, to produce a judgment of exclusion or removal by the competent authority. Here the fact found is indefinite in time and character. The inconsistent employments referred to may be trifling or temporary in character, or have occurred at a time, or in a manner, not to require the infliction of such a consequence as forfeiture of office.

The relators are entitled to the writ of mandamus, &c.

CLERKE, P. J. concurred.

MULLIN, J. (dissenting.)　The jury have found that the relator had been legally appointed a member of the police of the city of New York, under the act passed April 13th, 1853.

They have also found that he refused to take or hold office, and never has taken or held office, under the act of the legislature to establish a Metropolitan Police District, passed April 15, 1857, or under the board of police thereby established; but that he did continue to act as a policeman in the city of New York until the 3d day of July, 1857, under the old board of police, which board was in hostility to the metropolitan board of police.

They have also found that the relator did not withdraw from the new police force, as he had never accepted office in it; nor did he take office under the ordinance of the mayor and common council, passed June 2d, 1857.

The jury have also found that since the 15th April, 1857, the relator has, for his own private gain, entered into other employment in nowise connected with, but inconsistent with his duties as a member of the police force, and has received the sum of $110 therefor.

Upon these findings, the counsel for the relator insists that under the metropolitan police act, he being a member of the old force at the time the new act went into effect, became, without any act of his own, a member of the new force, and he having never been removed is still a member of such force, and is therefore entitled to the peremptory writ of mandamus, to compel the defendant to admit him to the performance of the duties of his office, and the emoluments thereof.

It is insisted on the part of the defendant, that it was not the intention of the legislature, in passing the metropolitan police act, to *compel* the members of the old force to continue in the new force against their wills.　That it was competent, therefore, for the members of the old force to dissolve their connection with the new by any act, which clearly evinces such an intention.　Refusing to serve under the board created by the new act, or serving in a force hostile to said board,

or accepting an office, or entering into an employment, the duties of which are inconsistent with their performance of duty in the new force, is evidence of an intention not to become or continue a member of the new force, and a complete bar to the writ sought in this proceeding.

By § 32 of the act to establish a Metropolitan Police District, and to provide for the government thereof, passed 15th April, 1857, it is provided that " the police in the cities of New York and Brooklyn, officers and patrolmen, shall *continue* to do duty under existing laws at the passage of this act, and according to the regulation of the departments of New York and Brooklyn, until after the first meeting of the board of police under this act, when the said police shall hold office and do duty under the provisions of the act hereby enacted, and as members of the police force of the Metropolitan Police District hereby constituted."

Under this return, it is quite clear that the members of the old force are made members of the new force, without any appointment by the new board, or any act of their own. In other words, they are continued in office and are not newly appointed, and by the 7th section the new board was prohibited from removing the members of the force without serving on them written charges, and after an opportunity given to them to be heard. No removal is alleged or pretended, in this case.

We must assume, then, that the relator become and was a member of the new, and unless he has by some act of his own terminated his connection with the force before or after the new act took effect, he must be considered still a member of it.

The acts which it is alleged the relator has done, evidencing his intention to terminate his connection with the new force, are his refusal to take office, and his accepting and entering upon the duties of an inconsistent employment.

The jury find that the relator refused to take or hold office, and never has taken or held office under the act of 1857, but

that he continued to act until the 3d day of July, 1857, under the old board, which board was in hostility to the new.

In *The People ex rel. McCune* v. *The Board of Police,* (19 *N. Y. Rep.* 188,) it was held that officers transferred under the act of the 15th April, 1857, from the old force to the new, who discharged the duties required of them, but refused to recognize the authority of the new board, are not to be deemed as refusing to accept, or as abdicating their office.

It was found by the jury, in the case of *McCune,* that after the 3d July, 1857, he reported himself for duty to the legitimate heads of the metropolitan police force, and had held himself in readiness for duty as a member thereof.

The cases of *McCune* and of the relator in this case differ on the facts found, in this: 1st. That Titus refused to take or hold office, and never had taken or held office under the act of 15th April, 1857. There was no such finding in the case of McCune. 2d. McCune offered to perform duty, and held himself in readiness for that purpose; whereas Titus accepted and entered upon the duties of an inconsistent employment.

Let us now inquire whether the refusal to take and hold office under the new board, under the circumstances stated by the jury, takes this case out of the principle decided in 19 *N. Y. Rep.* 188. The jury say he continued, notwithstanding his refusal to act as policeman, until the 3d of July. During this time he was acting under the old board, as was McCune, under the belief that the new act was unconstitutional and void.

The relator must be understood, then, up to the 3d July, as refusing to recognize the authority of the new board; not as refusing to do duty as a policeman; as this refusal to recognize the new board is held by the court of appeals not to work a forfeiture of office. I cannot perceive that this case differs in this respect from the case cited. And I am, therefore, of the opinion that the refusal to take office prior to the 3d July, is to be taken as meaning no more than that the re-

lator refused to recognize the authority of the new board or the validity of the new act.

But the finding of the jury does not limit the refusal to take office to a term anterior to the 3d July; but it is that he refused to take or hold, and *never* has taken or held, office in the new board.

Now conceding, as we must, that a refusal to accept prior to the 3d July, and actually doing duty under an authority hostile to the new board, did not operate as an abdication of the office, yet the question recurs, what is the effect of a refusal on or after the latter date? The new act merely continues the policemen appointed under the old in office; it does not propose to compel them to remain in it against their will. After the 3d July, McCune reported himself for duty; but this relator makes no offer of his services, but as the jury finds, refused to accept office or serve. Was not this a withdrawal from the office, to all intents and purposes? And did not the office become ipso facto vacant?

It is said that there was not a vacancy in the office, under § 34, 1 *R. S.* 122. That section does not profess to embrace all cases in which a vacancy in an office occurs. It surely was not the intention of the legislature to allow an officer to accept an inconsistent office, and yet the first not be thereby vacated. Yet at common law the acceptance of an inconsistent office does operate as a vacatur of the first office. (*Com. Dig. tit Office and Officer, K 5, B 6.*) The considerations which led to the adoption of the principle that a man cannot hold offices, the duties of which are inconsistent with each other, are as operative to day, and in this country, as in England at the time when the cases cited were decided. Indeed, this court, in the case of *The People* v. *Carrique,* (2 *Hill,* 93,) declared the rule still in force, that by the acceptance of an office, incompatible with an office then held, the first office is absolutely determined. When the relator found that the authority of the old board was no longer a protection to him, he had the election to remain entirely pas-

sive and become, by operation of the act of 15th April, a member of the new force. But he did not choose to do so: *"he refused to take the office, and never has taken or held office under the new board."*

The acceptance of inconsistent employment, in connection with the refusal to take or hold office under the board of police, is conclusive, it seems to me, of the intention of the relator to abandon the office. These acts are evidence of a resignation of the office, which the board not only had the right to act upon, but it was bound to act upon and to treat the office as vacant. It was not bound to go through the idle ceremony of serving charges upon a man who flung down his office in disgust and went into the service of another employer. One who thus conducts himself cannot, after two or three years of service under another employer, return and be reinstated in the office he left without cause or excuse.

The next finding presents a more difficut question. I refer to the 11th, in which the jury say that since the passage of the act of 15th April, 1857, the relator has entered into other employments, in nowise connected with, but inconsistent with his duties as a member of the police force, and received pay therefor.

We have not before us the evidence upon which this finding is predicated, and we cannot know what the employments were which were inconsistent with his duties as a policeman.

As the relator acted as a member of the old force till the 3d July, we must assume, I think, that such service was not the inconsistent employment referred to in the finding, and therefore that the inconsistent duty did not commence until on or after the 3d July.

In *The People* v. *Carrique*, (2 *Hill*, 93,) it was held that the appointment of a person to an office incompatible with one held by him is valid, and he has a right of election between the two. But if he accept and take the oath and enter on the duties of the second office, the first office is absolutely determined.

The finding in this case is, that the relator entered into other employments inconsistent with his duties as policeman. This is not an office, and therefore the cases cited do not in terms apply to the case. But it is quite obvious that it is within the principle.

While the acceptance of an inconsistent employment may not absolutely determine the office—as would the acceptance of an inconsistent office—it furnishes to the power that has the right of removal a ground for the exercise of its powers.

The board of police has never removed the relator upon this ground, in conformity with the provisions of § 7 of the act of 1857; and I think it does not of itself work a vacatur of the office.

It matters very little, it seems to me, whether this refusal is treated as a resignation of the office or an omission to accept, or by whatever name it is called, the result was that the relator would not be a policeman under the new act.

It will not do to hold that a subordinate officer may not only refuse to take or hold an office, but neglect altogether to perform its duties, and yet hold the office and receive its emoluments.

If it was proved in this case that on the morning of the 3d July the relator went to the board of police and informed them that he could not accept office or do duty under them, would it be contended that he would then be entitled to a mandamus to restore him to his office? Yet this is substantially the fact as found by the jury.

It is said that when the relator refused to accept office and do duty, it was the right and duty of the board of police to serve written charges on him, and after hearing him, to remove him, and in this way only could the board get rid of this officer.

To this suggestion, it seems to me, there are several answers. 1st. The court would not grant a party a mandamus to restore him to an office when it clearly appeared that there

was sufficient cause for his removal the instant he was restored. (1 *Hill*, 665. *Cowp.* 523. 2 *Verm. R.* 177. *Tap.* 192, 185. 7 *Eng. C. L.* 398.)

2d. An officer who refuses to accept an office and to do its duties has no equity in his favor, and the granting or refusal of a mandamus is in the discretion of the court, and will not be exercised in favor of a party who has no equity. (1 *Cowen*, 501. *Tapping on Mand.* 27. 15 *Barb.* 608. 16 *Eng. C. L.* 43.)

I am of the opinion, also, that we should hold the refusal to accept to be a resignation of the office, if a resignation should be deemed essential to the vacatur of the office.

It is provided by 1 *R. S.* 413, § 39, *5th ed.*, that on filing a resignation in writing with the secretary of state, the office of the person so resigning shall become vacant. This does not apply to the members of the police force of New York. Resignation by them is provided for by § 12 of the act of April 15th, 1857. That section provides, no member shall resign or withdraw from the force, unless he shall have given one month's notice thereof, in writing, to the general superintendent, under penalty of forfeiting the pay due to him. This section does not require a written resignation, except to escape the forfeiture of pay; and the members of this force are permitted to resign, as are all other officers not within the purview of the provision of the revised statutes above cited.

It was held in *Van Orsdall* v. *Hazard*, (3 *Hill*, 243,) that a resignation need not be in writing, but may be by parol. (*See also People* v. *Albany Com. Pleas*, 19 *Wend.* 27.)

Justice Cowen, in the case first cited, says, when no particular mode of resignation is prescribed by law, and when the appointment is not by deed, it may be by parol, as by the incumbent declaring to the appointing power that he resigns his office, or will continue to serve no longer, and requesting an acceptance of his resignation. Nor need the acceptance be in writing. It is enough that the office be treated as vacant, for instance, by appointing a successor.

I cannot resist the conclusion that, on the finding in this case, this relator, by refusing to take or hold office, has vacated his office, and is not entitled to the relief demanded.

Mandamus granted.

[NEW YORK GENERAL TERM, November 18, 1861. *Clerke, Leonard* and *Mullin,* Justices.]