THE PEOPLE *ex rel.* James Dunn *vs.* THE BOARD OF POLICE OF THE METROPOLITAN POLICE DISTRICT.

It was the intention of the legislature, in the enactment of the act of April 15, 1857, to establish a Metropolitan Police District, that the existing police force, as it was on the day when that act went into effect, should continue, by the mandate of the law, to do duty as officers and patrolmen under the new board; whether the men were in *de facto* or *de jure*.

The new board were not authorized to exclude or oust, by their simple fiat, any member from the then existing police force. That authority could only be exercised under the power of removal contained in the 7th section of the act of 1857, on written charges, after an opportunity had been given to be heard in defense.

Where, on an application for a mandamus to compel the Board of Police of the Metropolitan Police District to restore the relator to the office of patrolman of the police force, &c., the jury found, as a fact, that the relator had not a *valid* appointment or *lawful* warrant as member of the police department under the act of 1853, and had not been *duly* commissioned or appointed as such member, under said act; but the pleadings admitted that the relator was acting as a member of the police force at the time the new act went into operation, under the act in relation to the police department, passed in 1853; it was *held* that it being assumed as a fact, in the case, that the relator was acting as a policeman, at the time, and had an appointment, although not a valid one, he was entitled to the writ of mandamus as asked for. MULLIN, J. dissented.

APPEAL from an order made at a special term, denying a motion made upon the verdict of a jury, for a peremptory mandamus.

The People ex rel. Dunn *v.* Board of Police, &c.

*Beebe, Dean & Donohue,* for the relator.

*Brown, Hall & Vanderpoel,* for the respondents.

LEONARD, J. This case is in all respects similar to that of Wm. Gorman, except that the jury have found, in this case, the additional fact that the relator had not a *valid* appointment or *lawful* warrant as member of the police department under the act of 1853, and had not been *duly* commissioned or appointed as such member, under said act. The pleadings admit, however, that the relator was acting as a member of the police force at the time the new act went into operation, under the act in relation to the police department, passed in 1853.

The jury have found merely a conclusion of law. What the actual defect is in the appointment or warrant we cannot know. It is probable that the judge directed the jury at the circuit to find that the appointment was valid or invalid, according as they found certain facts to exist or not to exist. Whether the fact was that the relator's warrant had not been signed, or that a part only of the board of commissioners acted upon the appointment, or whether the appointment had been fraudulenly obtained, or how otherwise, we cannot know. We must now take the facts as the jury have found them. If the relator was aggrieved by the instructions of the judge at the circuit, the question could have been brought before us for review. No such question has been raised, and we must assume that the facts are found according to law.

We must now consider as facts in this case that the relator was acting as a policeman, and had an appointment, although not valid.

The new act of 1857, by § 32, continued the police, officers and patrolmen, at the passage of that act, in the performance of their duty. The language is, they "shall continue to do duty."

The case of *McCune* (19 *N. Y. Rep.* 188) decides that the

legislature did not by the new act make any appointments to office. The legislature had no authority to make appointments. They might direct a body of men, whose duty it was by pre-existing laws to perform certain services, to continue the performance of the same services under a new law, having a different board of commissioners for their direction. Was the relator excluded from the operation of the new law of 1857, directing the existing police force to continue to do duty? If not, he was directed to continue to perform the same duty which he had before done, and it was the duty of the new board to permit and direct the exercise of the powers and functions which the law made it the duty of the relator to perform, and not to oust, obstruct or remove him, except by due course of law.

It appears to me that the intention of the legislature was that the existing police force, as it was on the day when the new law went into effect, were to continue, by the mandate of the law, to do duty as officers and patrolmen under the new board, whether the men were in *de facto* or *de jure*. There was no opportunity for the new board to make distinctions among the members of the force, as to the form or regularity of their appointments. The duty of winnowing the bad from the good; those who were in by invalid titles or by no title, from those whose title to office was complete; those who were not qualified by reason of inability to read or write, or from any other cause, from those who were; all devolved upon the new board of police, under the power of removal, contained in the 7th section of the act of 1857, on written charges, after an opportunity to be heard in defense.

The new board were not authorized by their simple fiat to exclude or oust any member from the then existing police force. This authority could only be exercised under the power of removal.

The relator is entitled to the writ of mandamus to restore him, &c.

CLERKE, P. J. concurred.

MULLIN, J. (dissenting.) The first finding in this case is, "that on the 15th day of April, 1857, the relator had not received and did not possess any valid appointment or lawful warrant as member of the police department, under the act of April 13th, 1853, and had not been duly commissioned or appointed as such member, under said act." This finding disposes of the case.

The court of appeals, in *The People ex rel. McCune* v. *The Board of Police,* (19 *N. Y. Rep.* 188,) expressly repudiate the idea that the act of 15th of April, 1857, appointed the members of the old police members of the new, and held that they were continued in office merely because no new oath of office was necessary in order to make them officers of the new force.

In continuing policemen in office, it is reasonable to presume that the legislature intended to continue those who were in by valid appointments. It would be absurd to suppose that the legislature designed to make new members of the new force, who, by fraud or unfair practice on the part of those who had the power of appointment, should have a nominal membership in the force. Section 33 of the act of 1857 demonstrates that it was not the intention to retain in the new force any member of the old not legally qualified. That section provides that the board shall remove from office any member of the police department of New York and Brooklyn not possessed of the qualifications set forth in the 7th section of that act. This of course applies to those who have been legally qualified, but who could not read and write the English language, or who were not citizens of the United States; or who shall not have resided in the police district five years; or who shall have been convicted of crime.

The language does not, in terms, authorize the continuance in office of any policeman not legally appointed. If we

are right in supposing it was not the intention of the legislature to do so, then surely it requires some positive rule of law to accomplish a result that the legislature have neither intended nor provided for.

If the legislature has not converted an officer *de facto* into an officer *de jure* by the 32d section of the act of 1857, then the member of the force who was such *de facto* before the act is such *de facto* still.

The question then is, is an officer *de facto*, who has been deprived of his office, entitled to a mandamus to restore him to it; or is that the right of the officer *de jure* only?

So far as the public are concerned, the acts of the officer *de facto* are as valid as those of an officer *de jure*. (*People* v. *Collins*, 7 *John.* 549. *McInstry* v. *Tanner*, 9 *id.* 135. *Parker* v. *Baker*, 8 *Paige*, 428. *People* v. *Covert*, 1 *Hill*, 674. *Greenleaf* v. *Low*, 4 *Denio*, 168. *Weeks* v. *Ellis*, 2 *Barb. S. C. R.* 320.)

The officer *de facto* cannot, however, maintain an action in his own behalf founded on his office, or right of office. (*Green* v. *Burke*, 23 *Wend.* 490. *The People* v. *Hopson*, 1 *Denio*, 574.)

It would seem to follow, from the cases last cited, that the officer *de facto* could not maintain an action to recover his office if he was ousted or removed therefrom by reason of the defect of title.

While I find no case which holds that the officer *de facto* is entitled to a mandamus to restore him to his office when removed, there are several authorities which approach so near to it that I think they may be considered as supporting that proposition. In *Tapping on Mandamus, pp.* 28, 29, it is said that the prosecutor (for a mandamus) must be clothed with a *clear, legal and equitable right* to something which is properly the subject of the writ; and also that it is legally demandable from the person to whom such writ must be directed; otherwise the court will not interfere.

Can it be said that an officer *de facto* has a *clear, legal and equitable* right to his office ? It seems to me not.

If there has been an election which is void, the court will by mandamus require the electors to proceed to a new election, although there is a person in office under the void election. (*Tapping on Mandamus,* 181.) When, however, the incumbent is in by an election *prima facie* good, the court will not grant a mandamus to the person legally entitled, because he has a remedy by *quo warranto*. (*Id.* 182.)

When the office is full by appointment clearly made without authority, the writ will be granted, though generally a plenarty is an objection to such a proceeding. (*Id.* 183.)

The same author, at page 185, says, when there is an ascertained defect of title in him who applies for admission to an office, the court will not admit him, for he may be ousted immediately.

In *The King* v. *The Mayor &c. of London,* (1 *Term Rep.* 423,) a mandamus was refused to a person elected for the fourth year, after having been elected three successive years to an office to which, by the custom of the city, no person could be elected or serve more than two years successively.

The relator, by the findings, not only had no legal appointment to the office of policeman under the old board, but he refused to take or hold, and never has taken or held, office under the act creating the new board, and since the passage of that act has been engaged in employments wholly inconsistent with the performance of the duties of a member of the police force. It is not found that he ever performed duty as policeman, nor that he had even the color of an appointment. He was not, under such circumstances, even an officer *de facto.* Section 32 does not reach this relator. That section continues in office only those members of the police who were officers or patrolmen at the passage of that act. The relator is not shown to have been a member of the force, in any way whatever, and hence he was not permitted to do duty under the new act.

For these and other minor considerations, I am of the opinion that the relator is not entitled to the relief he seeks; and that there must be a judgment on the verdict, for the defendants.

Mandamus granted.

[NEW YORK GENERAL TERM, November 18, 1861. *Clerke, Leonard* and *Mullin*, Justices.]