By the Court.—Sedgwick, Ch. J.
The plaintiff gave in evidence the following extract from a meeting of the Board of Fire Commissioners, of May 20, 1875. “ I. Patrick Rielly (the plaintiff) is hereby appointed an assistant-engineer in this department, at a salary of $1,250 per annum, and assigned to the repair shops. He will report for duty on the 21 inst., at 8 a. m., to the chief of battalion in charge of the repair shops. II. Assistant-engineer Patrick Rielly, of the repair shops, is hereby detailed for duty in engine company No. 43, and will report for duty at Pier No. 1, 9 a. m. on the 21 instant.” He did duty as assistant-engineer with company No. 43 until October 7, 1875. The plaintiff gave in evidence another extract from the minutes of the board meeting of October 6, 1875, which was: “Appointments were made to take effect on 7 instant, as follows : Patrick Rielly, relieved from duty as assistant-engineer of steamer, and appointed a machinist in the repair shop at a salary of $3 per day.” An order was made thereon, which was: “ Patrick Rielly is hereby relieved from duty as assistant-engineer of steamer, and appointed a machinist in the repair shops at a salary of $3 per day, to take effect at 8 a. m. on the 7 instant.” The plaintiff thereupon wentjnto the repair shop and did the duty of a machinist. He then, after a time, in pursuance of orders given, left the repair shop and was attached to an engine company. The orders were in the following form: “Machinist Patrick Rielly, of the repair shops, is hereby attached to the engine company No. 43, for duty as acting assistant-engineer of steamer, until relieved by the commanding officer of that company, where *276 upon, he will immediately report back for duty at the repair shops. During the time of his service, as herein ordered, he will be dropped from the repair shop payroll, and taken upon the pay-roll of engine company No. 43, as assistant-engineer of steamer, with the pay, at the rate of $1,250 per annum.” This order was in pursuance of a proceeding of the board, which was shown by the following extracts from its minutes: “ The president reported the following: Detail of machinist Patrick Rielly, from repair shop, to engine company No. 43, as acting assistant-engineer of steamer, at a salary of $1,250 per annum, from 22 instant.”
When the plaintiff was with the engine company, he was paid at the rate of $1,250 per annum, signing a receipt on the pay-roll, which described him as acting assistant-engineer. When he worked at the repair shops, as machinist, he was paid at the rate of $3 a day, signing a receipt on a pay-roll, which described him as a machinist.
Apart from the face of the orders and of the payrolls, there was no evidence as to what, in the organization of the department, according to rules established, or practice adopted, were the duties and official relations of an assistant-engineer or of a machinist. It was not otherwise shown whether an assistant-engineer had duties attached to his place, which were to be done at the repair shop, nor whether, if in regular' course that were the case, there were not duties of a similar or different kind to be done by another kind of subordinate, distinctively known as and designated by the name of machinist.
The plaintiff gave testimony tending to show that a uniform in which he appeared at the trial, was the insignia of his rank. These were his words, and further, that such uniform was the insignia of the rank of assistant-engineer in the fire department. He was asked by his counsel immediately: “Have you ever received *277 any other appointment than the one already introduced in evidence, the one of 20 May, 1875?” His answer was, “Not any, at any time.” The defendant’s counsel then asked, “You have received orders at different times, detailing you to other services ?” “A. The other service was mechanical service.”
The pay-rolls, by themselves, would indicate that there were two places, distinctly different, one that of an assistant engineer, and the other that of a machinist. The counsel for plaintiff has argued that by Brennan v. The Mayor (62 N. Y. 365), the pay-rolls are not evidence against the plaintiff for any purpose. A reference to the facts of that case will show that the pay-rolls, which the court held not to be evidence against the plaintiff, were pay-rolls on which that plaintiff’s name did not appear, and on which, therefore, his receipt for salary could not have been. In the present case, the pay-rolls show by the admission of the plaintiff that he received salary as a machinist sometimes, and sometimes as an assistant engineer.
If resort be had for information to the proceedings of the board and the orders issued thereon, it appears from them, taken altogether, so far as I am able to see, that there was a subordinate place in the department designated as “assistant-engineer,” part of whose duties were to be done in connection with an engine company and part at the repair shops, as the board might assign. The first appointment, that of May 20, 1875, appointed him an assistant-engineer and assigned him, as such, to the repair shops ; and the same minute proceeds, “ assistant-engineer Patrick Reilly, of the repair shops, is hereby detailed for duty in engine company No. 43.” Accordingly, on October 6, 1875, after which he was paid for a time $3 a day, he was not assigned, as an engineer, back to the repair shops, but, as appears by the order of that day, he “ was relieved from duty as assistant-engineer of steamer and *278 appointed a machinist in the repair shops” at $3 a day. This order, 1 suppose, follows the terms of the appointment by the board, although in the printed case there seems to be an omission of some words.
The order of March 22, and the minutes of March 30, call him machinist Patrick Reilly, and detail him by such title from the repair shops to engine company No. 43, as acting assistant-engineer of steamer, “until relieved by the commanding officer of the company, whereupon he will immediately report back for duty at the repair shops. During the time of his service as herein ordered, he will be dropped from the repair shop pay-roll and taken upon the pay-roll of engine company No. 43, as assistant-engineer of steamer, with pay at the rate of $1,250 per annum.” There was no proof given of what was an acting assistant-engineer.
It is upon this basis, that the learned counsel for plaintiff contends" that the plaintiff is-now, and always has been, a member of the uniformed force of the fire department; that by section 77 of charter of the city of New York (chap. 335, Laws of 1873), the Fire Commissioners are prohibited from removing a member of the uniformed force, except “ after written charges shall have been preferred against him, and after the charges have been publicly examined into, and after notice to the persons charged that the commissioners had no authority to relieve the plaintiff from duty as an engineer and appoint him to a subordinate position as a machinist, at a daily salary; that if such order could be enforced, it would amount to a removal, in violation of the charter ; that- the order was in fact a nullity, and in no way affected plaintiff’s place of assistant-engineer, or his right to be paid the salary, attached to that place.
So far as the testimony discloses, it seems to me that these places which the plaintiff filled, have an *279 nexed to them respectively duties which the law did not intend should be performed by one person at the same time, and that, as the term is, it would be incompatible for one person to fill the two places. In the People v. Green (5 Daly, 260), Judge J. F. Daly, in an opinion which, on review by the court of appeals (People v. Green, 58 N. Y. 295), was approved, said that legal incompatibility arises “ from the necessity of the incumbent performing the duties of both offices at all times in person and not by deputy.” It results from this, that when the plaintiff accepted the place of machinist, he voluntarily vacated the place of assistant-engineer. He did not resist his being appointed machinist, and he did not claim to be assistant-engineer when he was appointed machinist. Whatever of removal there may have been, he assented to and acquiesced in, and when he acted as machinist, he disabled himself from performing service as assistant engineer. On this service, or a readiness to perform it, is based his right to the salary (Smith v. The City of New York, 37 N. Y. 518).
The provision of the charter cited (§77), that officers and members of the uniformed force shall be removable only after written charges shall have been preferred against them, etc.,” means to refer to a removal in invitum. It does not mean to abridge the power and right of a person to resign or vacate an office or membership, at least of this kind. So far as the provision is for the personal advantage of the holders, as it was introduced for his benefit, he may renounce the advantage.
In the Metropolitan Police Act of 1857, there was a like kind of provision against the removal of patrolmen, excepting charges were made. The People v. The Board of Police (19 N. Y. 188), held that the act transferred to the police force created by it, the members of the then existing police in Hew York and Brooklyn, *280 without any affirmative act of acceptance on their part. Although they were thus in office under the later act, and not to be removed except upon charges and conviction of them, the court of appeals held, in People ex rel. Hanrahan v. Board of Metropolitan Police (26 N. Y. 321), as undoubted law, that to divest a patrolman of the office, a formal resignation was not necessary. “ Affirmative acts on his part, of resignation or repudiation of the office, are quite as effectual to divest him of it, as affirmative words spoken or written.” There might be a practical desertion, abandonment and repudiation of an office or its duties. Another opinion looked upon the acts as equivalent to a resignation, because “ the relator refused to hold the office. Being in possession by' virtue of the statute, he refused to continue in possession, he refused to have the office. What act could he have done more effectually to divest himself of the office?” It can be said that there is a removal, when the holder is compelled to go; but when he voluntarily leaves, there is no removal, in the sense of the statute. He may think, as the plaintiff may have thought, in this case, that if he do not accept the subordinate and incompatible duty, there will be an attempt to remove him unjustly or illegally. But, while this may be motive of voluntary yielding, it does not alter the quality or the consequences of the act, done voluntarily by him, of accepting the incompatible place.
I am therefore of opinion, that the plaintiff was not entitled to recover the amount of salary due to an assistant-engineer, while he was filling the' place of machinist. He was paid for the latter, and the request of the defendant that the verdict be directed in his favor, should have been granted.
The exception to the direction of á verdict in favor of plaintiff, is sustained; the verdict set aside, and a new trial ordered, with costs to defendant to abide event.
Freedman, J., concurred.