THE BOARD OF COMMISSIONERS OF PILOTS, Plaintiffs and Appellants, *v.* CORNELIUS VANDERBILT, Defendant and Respondent.

The law requiring the board of commissioners of pilots to give notice to persons erecting structures beyond the exterior line defined by the commissioners for the preservation of New York harbor, under the law of 1860 (ch. 522, § 2), is not complied with when the notice is made out and served by the president of the board.

The law requires such notice to be given by the board itself. When given by the president, though verbally authorized by the board, it is not sufficient.

Such defective notice will not charge the person notified with the penalty imposed by law for continuing such structures after notice.

THE appeal is from a final judgment of the General Term of the Superior Court of the city of New York, entered June, 15th, 1864 (overruling exceptions taken by the plaintiffs at the trial, and ordered to be heard in the first instance at the General Term), dismissing the plaintiff's complaint and adjudging $284.57, costs and disbursements to the defendants.

This action was brought to recover a penalty of $25 per day from November 10, 1860, to the day of trial, for a violation, by defendant, of section 2 of the act "To prevent encroachments and obstructions in the harbor of New York, and to authorize their removal," &c., passed April 27, 1860, being chapter 522 of the Session Laws of 1860, page 1063.

The section is as follows:

§ 2. "It shall not be lawful for any person to build, erect or maintain any pier, bulkhead, or other structure, or to fill in with earth, or other material, in the waters of the harbor of New York, beyond the exterior line defined and recommended by the commissioners for the preservation of the harbor of New York, and established in and by chapter seven hundred and sixty-three of the Session Laws of eighteen hundred and fifty-seven; and in case of the building or erection of any such pier, bulkhead, or other structure or of maintaining of any such pier, bulkhead, or other structure, whether now existing or hereafter erected, the board of commissioners of

pilots shall notify the person or persons building, erecting or maintaining the same, within a time to be prescribed and specified in their notice; and in case of failure to comply with such notice, the said board of commissioners of pilots shall have the power to cause so much of such pier, bulkhead or structure, as is beyond the exterior line so defined and established, to be forthwith removed, and the person or persons who built or maintained the same shall be liable to pay all expenses of such removal, to be recoverable by and in the name of the board of commissioners of pilots, and shall also pay a fine of twenty-five dollars a day for each and every day which such obstruction shall remain after such notice, and until such pier, bulkhead, or other encroachment shall have been removed, as herein provided. This section shall not apply to piers or bulkheads built before the establishment of said exterior line."

The complaint alleged that the defendant, in the year 1860, built and maintained a certain structure, being the section of a pier, in the waters of the harbor, at a point south of pier No. 1, North river, wholly outside of the exterior line established in the aforesaid act of April 27, 1860. That the plaintiff, on the 10th day of November, 1860, notified defendant, pursuant to the act, to remove the said structure within five days from the date of the notice; that the defendant wholly failed and neglected to comply with the notice; judgment demanded for the penalty, &c.

The answer set up several separate defenses, alleging that the structure complained of was built under authority of the mayor, aldermen and commonalty of the city of New York, denying that it was an obstruction, denying the constitutionality of the law, &c.; and in respect to the allegations of the complaint touching the notice, denied any knowledge or information sufficient to form a belief respecting the same, or any of them. The answer contained no other allegation or statement of defense touching the notice.

The cause was tried before Mr. Justice ROBERTSON and a jury, November 20, 1863. At the close of the plaintiff's evidence, the judge granted a motion for the dismissal of the

complaint, and refused to submit any question of fact to the jury. On the exceptions to these rulings, the plaintiffs moved for a new trial at General Term, when the exceptions were ordered to be heard in the first instance, judgment being suspended in the meantime. The exceptions were overruled and final judgment ordered for defendants, June 15, 1864. The plaintiffs appealed to the Court of Appeals.

The leading facts established at the trial were as follows: The defendant, in November, 1860, entered on the waters of the harbor of New York, and sunk the structure in question, being a "crib," or section of a pier, at a point 150 feet south of pier No. 1, and 160 or 170 feet west of the Battery line and of the pier line, as established by law. It was a block 40 feet square, extending 17 or 18 feet above the bed of the river. It was wholly outside of the pier line. It was unauthorized by law and was a public nuisance. It was so adjudged by this court in *The People* v. *Vanderbilt* (26 N. Y., 287).

The board of commissioners of pilots, constituted under the pilot act of June 28, 1853, and holding regular meetings as provided by section 7 of that act, on the first Tuesday of every month, are the board of commissioners empowered to prevent and remove encroachments of the harbor under the act of 1860. The board, at a regular meeting held December 7, 1858, being apprised that this invasion of the harbor was threatened in advance of the sinking of the pier, condemned it by resolution as illegal and directed it to be resisted to the extent of the law. The board from that time watched the progress of the proposed pier with vigilance. It was a constant subject of discussion at their meetings. As soon as the crib was sunk the board acted promptly to remove it. At a regular meeting the board determined to have the defendant notified to remove it. The matter was discussed, and, after discussion, the unanimous action of the board was to order the defendant to be notified to have the obstruction removed. No entry was made on the minutes, and no written resolution or order showing the determination of the board was made. The president was especially directed by the

board to fix the time within which the structure was to be removed. This was according to the general rule and practice of the board. The question of time was always left to the president. He fixed what he considered a reasonable time.

In pursuance of this authority, the president of the board did give notice in writing, in his own name, which notice prescribed and specified five days as the time within which the structure should be removed. It was served personally on the defendant on the 10th November, 1860, and shortly afterwards on the contractor who was building the pier. The defendant made no objection to the time specified in the notice. He paid no attention to the notice, but proceeded in the erection of the pier. He took his ground on the question of right.

The board, on the 4th December, 1860, directed the president to advertise for proposals for the removal of the structure, and after receiving and rejecting, as informal and unsatisfactory, various bids, finally, September 7, 1861, accepted proposals of Morris & Cummins, and entered into a contract with them for its removal, to be done and performed pursuant to section 2 of chapter 522 of the Laws of 1860. The defendant opposed their action, enjoined their proceedings, and it was not until after the decision of the Court of Appeals, in the suit of the people of the State of New York against him, April 11, 1863, adjudging the pier a nuisance, that it was removed.

*W. Allen Butler,* for the appellants.

*W. Curtis Noyes,* for the respondent.

HOGEBOOM, J. The action is for a penalty prescribed by a positive statute; and the conditions upon which the penalty attaches must, therefore, be shown to have existed. The penalty imposed by the act is a fine of twenty-five dollars for every day which the obstruction shall remain after a notice from the board of commissioners of pilots to the person erecting or maintaining the obstruction. The object of the notice,

and the act to be performed under it, are very imperfectly described in the statute — so imperfectly, indeed, that I have great doubts whether the act is of any legal effect in regard to the imposition of a penalty. The person offending is to be notified; and it is obvious that he is intended to be notified to do something, and to do this something within a time to be prescribed and specified in the notice; but what this something is, is not stated, and can only be conjectured from other parts of the section. It is inferable that he is to be notified to remove the obstruction, because the fine of twenty-five dollars attaches every day until it is removed. But I doubt very much whether the inference or implication as to the act to be done is as clear as if it were expressly written in the statute; and unless the implication exists to nearly that degree of certainty, I think the act is radically defective. In case of failure to comply with the notice, the board of commissioners may cause the obstruction to be removed, and the offender becomes liable for the expenses of the removal, and to the fine in question. But to subject a party to consequences so highly penal, the contents of the notice should be plainly prescribed in the act, so as to make a compliance with it, and the consequent avoidance of the penalty, practicable. I have, therefore, great doubt whether there is not a radical and fatal omission in the terms of the act in regard to the contents of this notice.

But, waiving this question, and assuming that the notice is to require the removal of the obstruction, I am of opinion there is another difficulty in the plaintiffs' case which is insuperable. The board of commissioners have never given the notice required by the act. There was a notice from the president of the board, and that did not purport to be the act of the board, nor pursuant to their direction, nor was it given in their name; and, possibly, it might have been disregarded for that reason. But, if we may presume, in the absence of evidence, that it was given under the authority of the board, in the manner required by the law, the presumption is effectually repelled by the positive proof in the case. It affirmatively appears, not only that there was no written resolution

or order of the board directing the notice, and no record of their proceedings, but that, while the board verbally ordered a notice to be given by their president, they did not, verbally or otherwise, prescribe the form or substance of the notice, and especially they did not prescribe or specify the time, or any time, for removal, which was contained, or to be contained, in the notice. I am of opinion that this was a fatal defect in their proceedings. The act required it to be *their* notice, and not the notice of the president. *They* were to prescribe the time, and not their *president*. The time was *discretionary* with them, and their judgment in regard to its period and duration was exacted by the act. The notice was, by law, to be reasonable, and susceptible of being obeyed. The obstruction could not be removed in a minute or an hour, probably not in a day. These circumstances — the nature of the obstruction, the time required for its removal, the impediments to navigation arising from its continuance — were all proper for their consideration, and the consideration of them in effect vested in them by the terms of the act. This was, in its nature, a *judicial* act, that is, one calling for the exercise of judgment and sound discretion. It was, therefore, to be exercised personally by them, and could not be delegated to a third person, or one of their own number.

It is no sufficient answer to this view of the case, in my judgment, to say that the defendant had no legal rights and no lawful property in this structure which were capable of violation by a short or insufficient notice, and, therefore, that he has no right to complain in regard to the nature, terms or origin of the notice. The contrary is plainly to be gathered from the terms of the act. It was designed that the notice should be *reasonable*, in view of all the circumstances of the case — the magnitude of the structure, the time it would take to remove it, the dangers or inconveniences arising from its presence in the river, and, perhaps, the good or bad faith under which it had been erected. We may infer that a considerable amount of labor and a considerable quantity of valuable material had been expended in its construction; that these were of some value to the defendant, and were not

intended by the legislature to be needlessly or arbitrarily sacrificed.    And, whatever may be our opinion of the motives which induced the erection of this nuisance (and we are not here sufficiently in possession of all the facts of the case intelligently to judge of them), the construction of the act must be determined upon general considerations growing out of its language and apparent spirit and intent.

I am of opinion that the complaint was properly dismissed; that the judgment of the court below was right, and should be affirmed.

DENIO, Ch. J., WRIGHT, JOHNSON, SELDEN, and MULLIN, JJ., affirm on the last ground stated; all concur in affirming the judgment.

Judgment affirmed.