# SUPREME COURT.

The People of the State of New York and John T. Hoffman, Mayor, &c., of New York agt. Thomas C. Acton and others, Commissioners of Metropolitan Police, and the Board of Metropolitan Police.

The second section of article 10, of the constitution of this state (1846), is as follows : "All county officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of the respective counties, or appointed by the boards of supervisors or other county authorities, as the legislature shall direct. All city, town and village officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the legislature may direct."

The legislature are prohibited under this section of the constitution, from investing the *board of metropolitan police* with the powers and duties now conferred by laws and ordinances upon the mayor, the common council, the mayor and common council, and all other boards and officers (except the metropolitan board of health) of the city of New York, in respect to theatres and places of *public amusement*, keepers of *boarding houses for emigrant passengers*, junk-shop keepers and junk boatmen, pawnbrokers, venders, hawkers and pedlers, dealers in second-hand articles,

keepers of intelligence offices, auctioneers, hackney coaches and carriages, and the owners and drivers thereof, carts and cartmen, cabs and cabmen, porters and hand-cartmen, omnibuses and omnibus drivers, cars and car drivers, to the same extent as though the said board of metropolitan police was named in such laws and ordinances in the place of, and stead of, the mayor, common council, or mayor and common council, and other boards and officers of said city of New York, as enacted and passed by the legislature in 1867.

By this act, officers to perform specific local and city duties, are appointed by the *state authorities*, instead of being appointed by the *city authorities, or elected by the people.*

*New York General Term, May,* 1867.

A CASE agreed upon, without action, has been submitted, for the purpose of obtaining a decision as to the validity of a certain section incorporated into the tax law at the last session of the legislature, which the plaintiffs claim to be unconstitutional and void, and ask that the defendants be restrained from executing any of the powers, duties and privileges, conferred thereby.

The act is entitled "An act to enable the board of supervisors of the county of New York, to raise money by tax for certain county purposes; to extend the powers of the metropolitan police, and to provide for the auditing and payment of unsettled claims against said county."

The twelfth section of the act, which is the one of which the plaintiffs complain, provides as follows: "The board of metropolitan police is hereby invested with, and shall exercise all the powers, and perform all the duties now conferred by laws and ordinances upon the mayor, the common council, the mayor and common council, and all other boards and officers (except the metropolitan board of health) of the city of New York, in respect to theatres and places of public amusement, keepers of boarding houses for emigrant passengers, junk-shop keepers and junk boatmen, pawnbrokers, venders, hawkers and pedlers, dealers in second-hand articles, keepers of intelligence offices, auctioneers, hackney coaches and carriages, and the owners and drivers thereof, carts and cartmen, cabs and cabmen, porters and hand cartmen, omnibuses and omnibus drivers, cars and car drivers, to the same extent as though the said board of metropolitan police was named in such laws and ordinances, in the place

and stead of the mayor, common council, or mayor and common council, and other boards and officers of said city of New York. Such investure of powers and duties, shall exclude that of said mayor, common council, and mayor and common council, and other boards and officers."

The section also contained those ordinances passed in relation to the matters therein referred to in full force and effect, and the board of metropolitan police was authorized to alter, amend, modify or repeal the same.

DAVID DUDLEY FIELD, *for plaintiffs.*
LEWIS B. WOODRUFF, *for defendants.*

*By the court,* INGRAHAM, J. The powers and duties, which by this act are taken from the municipal authorities, and are intrusted to the defendants, have been exercised by those authorities alone, since there was any authority for the execution of them by any public body. The power to license, in many of those cases, was given to the mayor by the 24th section of the Montgomery charter, and as to the others, similar powers have been confirmed or conferred by statute, down to the passage of this act. It is not material for the purposes of this case, to inquire particularly when or by what means, these powers have been conferred. I state generally the fact that they were so intrusted to the municipal authorities, merely for the purpose of showing that from the commencement of the city government, these powers have always been treated as local matters, peculiarly belonging to the municipal authorities, to be controlled and exercised by them alone.

But, although these powers have always thus been conferred on municipal authorities, still they are not to be considered as franchises vesting in the common council any irrepealable title to their enjoyment and use. That question has been long since settled, and it must now be considered as settled by law, that these are mere political powers, subject to the control of the legislature, to be regulated by that body, and that they confer no vested rights.

These principles have been so frequently declared by the courts, that I do not deem it necessary to cite authorities therefor. In fact, I do not understand the counsel for the plaintiffs as claiming any such right on behalf of the mayor or common council. But it is claimed by the counsel for the plaintiffs, that these offices and duties are local, applicable to the city authorities, and should be performed by local boards or officers. So far as the power of legislation is in question, I cannot agree to the proposition that the necessary legislation in regard to all such officers and duties, is not appropriately within the power of the legislature. These laws have always originated with the legislature. They had the right, and have always exercised the right of prescribing and controlling the powers and duties of all officers in the state, whether local or general, unless in cases where the constitution of the state restrained that power; but when the legislature goes beyond that power, and directs the appointment of local officers to be made by state authority, either directly by an act of the legislature, or indirectly by officers appointed by the legislature, or by the executive authority, the 10th article, 2d section of the state constitution, conflicts with the exercise of such a power.

The difficulty which occurs to me, however, on this branch of the case is, that no class of persons referred to in the 12th section of this act, can be said to belong to public officers. A license to a person to follow any particular trade or business, is not an appointment to office, nor does it confer any of the powers or privileges of a public officer. It is a mere license to follow his calling, whatever it may be. The duties to be performed are not public duties, and the public have no interest in their performance or omission. The object of the license is for the purpose of controlling the business, and preventing its being conducted in a manner injurious to the public welfare. Beyond that, the public interest is not affected, and if the licensee neglects to act under his license, the public cannot complain.

The only ground of objection that can be taken to these provisions, under this article of the constitution is, that offi-

cers to perform specific local and city duties, are appointed by the state authorities, instead of being appointed by the city authorities, or elected by the people.

Such has been the conclusion to which I have arrived in regard to other laws of a similar character, passed by the legislature within a few years past. Beginning with the case of *The People* agt. *Draper* (15 *N. Y.* 539), down to the last case of *The People* agt. *Pinckney* (32 *N. Y.* 377), it seems to have been conceded that city officers in existence at the time of the adoption of the constitution, or persons to discharge their duties, could not be appointed by the state or legislature, but must be elected by the people, or appointed by the county or municipal authorities. In the first case, *People* agt. *Draper*, DENIO, C. J., says : " If the provisions of the statute had been limited territorially to the city of New York, it would have been in conflict with the section of the constitution referred to. If the public duties with which the act charges the commissioners, cannot be performed by them consistently with the constitution, their own appointment cannot be upheld."

In the latter case of *People* agt. *Pinckney*, BROWN, J., in a dissenting opinion relating to another point, remarks : " It is the power which this act gives to intrust the execution of the duty of providing for the prevention of fires, to officers not elected by the people, or appointed by the local authorities, which, I think, conflicts with the constitution." And DAVIS, J., in the prevailing opinion, says : " Conceding that a metropolitan fire district is created by the act, composed of the cities of New York and Brooklyn, it cannot be doubted that the officers created under it are limited in their authority and functions to the city of New York alone. In my judgment, their appointment by the governor and senate is not, and cannot be justified on the grounds that enable this court to uphold the organization and appointments of the metropolitan police bill."

In *Clarke* agt. *City of Rochester* (28 *N. Y.* 605, 633), DENIO, C. J., says, in referring to several cases cited by him : " The principles settled in these cases are, that the legisla-

ture cannot commit the power of enacting laws to any other body than itself, not even to all the electors of the state."

And again, while general statutes must be enacted by the legislature, it is plain the power to make local regulations having the force of law in limited localities, may be committed to other bodies, representing the people in their local divisions, or to the people of those districts themselves. Our whole system of local government in cities, villages and towns, depends on that distinction. It is recognized in the constitution itself, which prescribes to the legislature the duty to provide for the organization of cities, incorporated villages, &c., and it contains an irresistible implication that the authority to lay local taxes, &c., may be be constitutionally committed to local boards or councils, within the cities and villages.

If the principles settled in these decisions are correct, then the conclusion must follow that the legislature cannot confer the power to discharge duties and make regulations, and pass laws relating thereto, upon state officers, no matter how appointed, whether by the governor and senate, or by the legislature. And although the legislature might have the power to take the discharge of such duties from the mayor or common council, they were required to place the performance of them with local officers or boards, and could not vest officers appointed under authority of the state with the performance of such duties.

Another objection to the validity of this law is made by the plaintiffs' counsel, that it is a local law, and embraces more than one subject.

In the case of *The People ex rel. Bradley* agt. *Stephens* (2 *Abb. N. S.* 348), this question was raised with others, and a doubt was expressed by me whether a tax bill was a local act, within the meaning of the constitution. The decision of that question at that time, was, however, unnecessary, in disposing of that case, as the proceeding was for a mandamus, which was not a proper remedy where the title to an office was in dispute, and on the latter ground the application was denied.

The tax law which contains these clauses, provides for extending the powers of the metropolitan police, and this object is stated in the title. So far as there is any legislation in regard to this board, it is not local, and the union with these provisions of others relating to local matters, would not necessarily render such legislation void. I do not think it by any means clear that such an act can properly be declared a local act. Even if it should be held to be local, so far as relates to. the tax law, the other portions would not be, and it might be a serious question which should be rejected, the portion claimed to be local, or that which is conceded to belong to general legislation.

Since the decision referred to above was made, the case of *The People* agt. *Hills* (*Court of Appeals, December Term, 1866*), has been decided, in which DAVIES, Chief Judge, described the meaning of the term "local," as applied to an act of the legislature, in the constitution. He says : " *Burrill* defines the word local, relating to place, belonging or confined to a particular place, distinguished from general, personal or transitory." This act (then under consideration) is purely local in its application. It has no force beyond a particular city or county, and is, therefore, confined to a particular locality. It is not general, and has no application except to the common council of a particular city. I assume that the act under consideration was local, within the meaning and intent of the constitutional inhibition.

Applying this description or definition of a local act to the portion of the one under consideration, containing the tax law, it would warrant the conclusion that it was local, and if so, it might be improper to place it in any other subject than the one which it was the main object of the law to enact. It is not, however, necessary to place the decision of this case on this ground. There are two other propositions which are made as to the validity of this section, viz : one that the legislature could not delegate to the board of metropolitan police the power of legislation ; and second, that the license fees being pledged to the sinking fund, the authority to repeal the laws granted to them is void, and

cannot be enforced. These two objections may both be considered under the question whether the legislature can thus delegate to the police board the power to legislate as to licenses, and to amend and repeal corporation ordinances.

The constitution provides that the legislature may confer upon the board of supervisors powers of local legislation. The granting of such a power to the legislature, naturally involves the supposition that they could not otherwise give such a power. If they could not give any such power to boards of supervisors without a constitutional provision, I am at a loss to see any authority to bestow such a power on a board created by themselves, and not a recognized body in the constitution. The powers given to them are to legislate in regard to local matters.

In *Barto* agt. *Himrod et al.* (4 *Selden*, 483), it was held that laws could only be enacted by the legislative bodies to which the legislative power is committed by the constitution. I see no good reason why the legislature should be allowed to commit to the board of police the power to legislate, when they could not even submit to the people the question whether they would approve of a law. (*See also Clarke* agt. *City of Rochester*, *supra*.) It is said that municipal corporations possess such powers delegated to them by the legislature. The power of legislating, is a necessary right to a municipal corporation, and authority to confer on them legislative power for local purposes, may be found in the ninth section of the eighth article of the constitution, which makes it the duty of the legislature to provide for the organization of cities and incorporated villages, &c. (*See Bank of Rome* agt. *Village of Rome*, 18 *N. Y. Rep. pp.* 38, 41.)

As, such, they were in existence when the constitution was adopted, and were recognized, and their charters continued; such a recognition would confine to New York all the chartered powers and authority possessed at that time.

As to the right to repeal these laws, so far as they provided revenue which has been pledged to the sinking fund, there can be no doubt as to the want of authority, even in the legislature.

The first act appropriating the revenue of the city to the payment of the public debt, was the act of 1812 (*chap.* 99). That act pledged all the revenues of the corporation to the payment of the interest and principal of the debt then created ; and they were to continue so pledged until the final redemption of the stock. By the act of 1820 (*chap.* 101), that pledge was applied to stock then to be raised, and so by the various acts passed it was continued. The act of 1838 (*chap.* 127), authorizing the Croton water stock to be issued, applied all previous laws as to the pledge of the faith and revenues of the city, to the payment of that stock. That debt is still in existence, and unpaid. Neither the corporation nor the legislature can withdraw from that pledge any of the revenues heretofore appropriated thereto, without a violation of the public faith, and it ought not to be allowed. It is proper to add, that by this section, these revenues when received, are reserved to the sinking fund.

These objections only apply, in fact, to the provisions of the twelfth section under consideration, viz : that portion which authorized the board of police to legislate on the subject ; but in connection with the other objections stated, show the impropriety of vesting in bodies not recognized by the constitution, the power to legislate on such matters.

I cannot better conclude my remarks on these questions, than by quoting the expressive language of an extract made by Chief Justice DAVIES, in *The People* agt. *Hills*, above referred to :  " To maintain the constitution is our first duty, and if the legislature has for any cause encroached upon that sacred instrument, or if an erroneous construction has been given to it, we are imperatively called upon to declare its meaning, and to assert its supremacy. Nothing can be more dangerous to our free institutions, or to the rights of the people, than to encourage doubtful interpretations of the constitution, contrary to its more plain and natural import, as understood by the great body of its readers."

I will only add to this, that attempts to defeat clear constitutional provisions, by resorting to technical evasions, should be equally resisted and frustrated by the courts.

Upon the ground first stated, the plaintiffs are entitled to the relief asked for.

JAMES C. SMITH, J. The plaintiffs claim that the twelfth section of the act of 1867 (*chap.* 806), referred to in the case submitted to us, contravenes the provisions of section 2, article 10, of the constitution of this state, which declares that " all city, town and village officers, whose election or appointment is not provided for by the constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose."

The section of the act referred to, commits to the board of metropolitan police, all the powers and duties conferred by law upon the mayor, the common council, the mayor and council, and all other boards and officers of the city of New York (except the metropolitan board of health), in respect to the various subjects specified in the section, and also authorizes such board of police to alter, amend, modify or repeal, all ordinances in force at the time of the passage of the act, concerning the persons, occupations or matters in said section mentioned. It is unnecessary at present to refer particularly to the subjects which the section enumerates ; it is sufficient to say that they all relate to the government of the city, and are matters of police.

The board of metropolitan police is composed of the commissioners of metropolitan police, who are officers of the metropolitan police district, and are appointed by the governor, with the consent of the senate. The district consists of the counties of New York, Kings, Westchester and Richmond, and certain towns in the county of Queens. (*Laws of* 1857, *chap.* 569 ; 1860, *chap.* 259.)

It is argued on the part of the plaintiffs, that as the provisions of the section under consideration, are limited territorially to the city of New York, and the duties which they devolve upon the board of metropolitan police are city duties exclusively, the section violates the spirit of the constitutional restriction referred to.

The constitutional provision invoked by the plaintiffs, has

been the subject of discussion and adjudication in the court of appeals. The case of *The People* agt. *Draper* (15 *N. Y.* 532), presented the question of the constitutionality of the act of 1857, which created the metropolitan police district, with its board of police, and vested in the latter certain powers and duties in respect to the police regulations of the whole district, which had been theretofore committed to officers elected by the several local constituencies within the district. It was objected in that case, that the act of 1857 was obnoxious to the constitutional provision now under consideration, but the objection was overruled. The judgment of the court proceeded upon the ground that the officers provided for by the bill were not county or city officers, but they were officers of the district thus organized, and the functions committed to them were to be exercised throughout the district. That was the turning point of the case. Chief Judge DENIO, delivering the opinion of the court, said: "The superintendent of police, captains, sergeants and patrolmen mentioned in the bill, are officials of the same character as those heretofore existing under somewhat different names; and if appointed for the city of New York, unconnected with the other territory annexed to it by the act, they should have been elected by the electors of the city, or of some division of it, or appointed by some authority of the city. The police commissioners, assuming that they were themselves constitutionally appointed, cannot be regarded as authorities of the city, within the meaning of the constitution. Hence, it follows, that if the provisions of the statute had been limited territorially to the city of New York, it would have been in conflict with the section of the constitution so often referred to" (*p.* 540). It is apparent from the opinion, that if the act of 1857 had limited the functions of the officers thereby created, to the regulation of the police of the city of New York, it would have been declared unconstitutional.

The views of the court of appeals upon this point, were again distinctly presented in the case of. *The People* agt. *Pinckney* (32 *N. Y.* 377). That case involved the constitu-

tionality of the act of 1865, creating the metropolitan fire district. The bill united the cities of New York and Brooklyn, into a district " to be known as the metropolitan fire district of the state of New York," and provided for the appointment by the governor, with the consent of the senate, of four citizens, resident of the district, as " metropolitan fire commissioners," whose office was declared to be thereby created ; but their functions and duties, as prescribed in the act, were in all respects territorially local, and confined to the city of New York. In the prevailing opinion delivered by DAVIS, J., the decision in the case of *Draper*, was referred to with approbation, and it was distinctly asserted, in respect to the question now in hand, that the officer to be appointed, " must be an officer of the new district or division, and not merely local in the scope and performance of his duties and functions, and therein superseding some existing local officer. He must be a district officer in the sense of his functions and authority, and not merely in name, with no powers or duties beyond a previously organized locality." " It would not be competent, therefore," the learned judge proceeds to say, " for the legislature to create a new civil division of the state, and abrogate the local officers of the several counties that might compose it, and direct the appointment by the governor and senate, of other officers limited to perform the same local functions only, although distinguished by new and more extended titles. If that were so, the central power could draw to itself the appointment of all local officers not expressly provided for by the constitution." The conclusion of the court upon the point thus presented was, that the officers created by the metropolitan fire district act, were not district officers in any just sense of the term, and that their appointment by the governor and senate, could not be justified on the grounds that enabled the court to uphold the organization and appointments of the metropolitan police bill. It was justified, however, upon a different ground, to wit : that the functions committed to the officers created by the bills, were not previously discharged by per-

sons who were public officers when the constitution was adopted, within the meaning of that instrument. The bearing of that position upon the case at bar, will be considered presently.

The principle so clearly and firmly established by the case of *Draper* and that of *Pinckney*, is fully applicable to the case in hand. The functions and duties transferred by the twelfth section are local, and confined to the city of New York. It is true, the officers to whom they are committed, are not merely local officers, and their offices were not created by the bill itself. But their offices were created since the adoption of the constitution, and they were appointed by the state authorities, and as the functions conferred on them by the section under review are purely local, the case is the same, with reference to the present question, as if the metropolitan board of police had been brought into existence by the act of 1867, with no other powers than those committed to them by the twelfth section. Thus viewed, the case obviously falls within the principle referred to, and must be controlled by it, unless excepted from its operation by the consideration which prevailed in the case of *Pinckney*.

To those, more particular attention will now be directed. The functions which were committed to the new officers created by the act reviewed in that case, were of two classes : 1st. Those which were theretofore vested in the fire department of the city of New York ; and 2d. Those which were given to " the mayor, aldermen and commonalty of the city, in common council convened," and were part of their general and corporate powers, as an administrative and legislative body.

In respect to the first class, it was held that neither the corporation called " the fire department of the city of New York," as it existed previously to, and at the time of the act in question, nor the officers elected under the provisions of its charter, nor the firemen who were members of the department, were public or civil officers, within the meaning of the constitution. That " the corporation was not a municipal or political body, and neither it nor its officers occu-

pied any greater official relation to the public than the officers or managers of the numerous religious and charitable corporations of the state."

The second class of functions consisted of an authority in the corporation of the city, to appoint the firemen and their officers, and power to legislate generally for their regulation. These were held to be no part of the official duties of individual officers composing the common council, but to be vested in the corporation; and it was also held that the corporation of the city is not an officer, within the meaning of the tenth article. It was said that " to diminish or restrict its general legislative or administrative power as a body corporate, is not to abrogate or change a public office, in the sense of the constitutional restriction."

I cannot adopt the conclusion that the legislation contained in the twelfth section, can be justified upon either of the grounds above stated. Unquestionably, the functions attempted to be transferred, are those of public officers. They are not only the powers of the mayor and common council, acting together as the legislative body of the city, but all the powers and duties respecting the subjects specified, of the mayor, as the sole chief executive and administrative officer of the city, of the common council, acting independently of the mayor, and of all other boards and officers of the city, with a single exception. The subjects to which these functions relate, are various and extensive. Some pertain to classes of persons engaged in particular occupations and callings; others affect the convenience and comfort of the citizens at large. The section transfers the control of every public conveyance, by land, for the transportation of persons or property, and of every place of public amusement, and not only does it transfer all functions of an administrative or executive nature, pertaining to the subjects enumerated, but also to the power of altering or repealing all existing ordinances in relation to them. By the act establishing the metropolitan police district, it is made the duty of the police board to obey and enforce all ordinances of common councils and boards of supervisors,

and town and village authorities within the district, which are applicable to police or health (§ 5). That provision is still in force, except that if section twelve of the act of 1867 is valid, in the single locality of the city of New York, the legislative power of the common council is subordinated to that of the board of police.

If these important powers can be taken from the city officers who have heretofore exercised them, and be centered in a new class of officers, not elected by the citizens nor appointed by the city authorities, and who, as to the functions thus conferred, are purely local officers, acting only within the city, the constitutional limitation referred to, is no protection to the rights intended to be preserved by it, for, in like manner, every function of every local officer whatever, may be transferred to new local officers created by the legislature.

It is unnecessary to examine the other questions discussed in the argument. Upon the grounds above stated, I am of opinion that the plaintiffs are entitled to judgment declaring the provisions of said twelfth section unconstitutional and void, and restraining the defendants from exercising any of the powers conferred by it.