THE METROPOLITAN BOARD OF HEALTH, APPELLANT,
v. JACOB HEISTER, RESPONDENT.

THE SAME, Appellant, v. THE SAME, Respondent.

JACOB HEISTER, Respondent, v. THE METROPOLITAN BOARD
OF HEALTH, Appellant.

THE SAME, Respondent, v. THE SAME, Appellant.

*Metropolitan Health Bill — Constitutionality — Divisions of State — Judicial
Powers.*

The act of 1866, ch. 74, creating "The Metropolitan Sanitary District of the
State of New York," is constitutional.

The Legislature have the power to establish new civil divisions of the State,
embracing the whole or parts of different counties, and when so established,
section two, article ten, of the State Constitution, is not applicable to such
divisions.    The People v. Draper (15 N. Y. 532), affirmed and approved.

Neither is the act referred to in violation of that provision of the Constitution
which declares that "the trial by jury, in all cases in which it has been hereto-
fore used, shall remain inviolable forever," nor of that article which pro-
vides that "no person shall be deprived of life, liberty or property, without
due process of law."    No property or person is injured by this act.

A jury had not been the ordinary tribunal to determine upon questions affect-
ing the public health, prior to the adoption of the Constitution of 1846.

The power to be exercised by. the board upon the subjects in question, is ad-
ministrative rather than judicial in its character.

THE above four cases were submitted to the General Term of the
Supreme Court in the First Judicial District, by the parties, under
the Code, for the purpose of procuring decisions upon questions
that had arisen between them, and which are also involved in
several other pending suits.

In case number one the Board claim to recover the penalty
given by the statute against one who has violated its order.    The
Defendant, when the order was made, was engaged as a butcher,
in the business pursuit of "slaughtering cattle at his slaughter-
house, No. 95 Fourth street, in the city of New York, which said
slaughter-house was in the densely populated portions of said city,

and was upon a paved street."  ' The Board of Health, the Plaintiff, on said day, as contemplated by the first subdivision of the fourteenth section of the Metropolitan health law (Laws of 1866, ch. 74), "took and filed among its records what (the same being written evidence) the Plaintiff regarded as sufficient proof to authorize its declaration that the same (the using of said slaughter-house for said pursuit) was dangerous' to health, and was also a public nuisance."  Said proof "consisted of statements of competent persons, under oath, that said business endangered the health of the people of the vicinity, was offensive to their senses, and rendered their life uncomfortable, and of facts sustaining such statements."  The Board thereupon "ordered said business to be discontinued, and said nuisance to be abated," but directed that the order should not be executed till the same had been served on the Defendant, and he had been afforded an opportunity to be heard. This order was duly served on the Defendant, and it is admitted "that the Defendant might have applied for, and have had, the opportunity and hearing contemplated in said section, but did not, at any time, apply for the same, but declined or omitted so to do; that the Plaintiff waited more than three days, as provided by law, after such service, and before commencing the execution of said order."  And thereafter a final order was in due course made by the Board, which is set out at length.  The police were directed to execute this order, "and the execution of the order was duly commenced;" and "all the doings and proofs and order of said Board in the premises appear among its archives, as the law provides."  The submission to the Court below was formally made by both parties.  The Defendant's theory was sustained, and judgment ordered in his favor, and an appeal has been taken to this Court by the Plaintiffs.

In case number two, the action is to recover a penalty for violating the ordinances of the Board of Health relative to slaughtering cattle in the city.  The case is different from number one, in this, that that related to the power of the Board to make special orders on notice and opportunity of hearing, which may be specifically enforced; but number two relates to its power to pass gen-

eral ordinances which only involve the liability to pay a penalty of fifty dollars. The leading facts are:

1. That the ordinance in question prohibited, first, the driving, and, second, the slaughtering of cattle in the city of New York south of Fortieth Street; and the Defendant was slaughtering at No. 95 Fourth Street, on a paved street, south of Fortieth Street.

2. The Defendant carried on his business in the "ordinary manner."

3. That one party claims the business is dangerous to life, and the other denies it. That the premises where the slaughtering was done are in a "thickly settled portion of the city, on a paved street," and "that there are sufficient facilities for slaughtering animals at places in the city above Fortieth Street."

4. That the business of slaughtering and driving "animals in the city impairs the enjoyment of life on the part of large numbers of people;" makes it more difficult than it need be to prevent bad meat being sold; "causes large amounts of blood and offal to go into the sewers," etc., "so that unhealthy exhalations are generated," etc.; and that, "on trial, the opinions of a large number of the leading physicians of the city were read in evidence, to the effect that slaughtering was dangerous to health," etc., while only one medical opinion was offered to the contrary.

5. On the basis of such facts, the Board of Health exercised its discretionary power of passing the ordinance in question, and it is admitted to have been duly published according to law.

6. It is then admitted that the Defendant violated the said ordinance of the Metropolitan Board of Health on two several days, viz., on the 12th and on the 23d of August, 1867; and one of the questions is, whether a penalty can be recovered for each of the two days on which it was violated, or for only one, the penalty for both being claimed.

7. A formal submission of the case is made by the parties.

8. A decision was made, and an appeal taken, as in the former case.

Case number three arises under a similar ordinance to that mentioned in the second action, and is based on like facts in

several particulars; it is further found "that the driving of cattle through the frequented streets of said city is attended with peril to human life," and that no cattle were driven below Fortieth street from the 28th August, 1867, to the making of the submission of the case, which was in January, 1868. But instead of being a suit by the Board to recover a penalty for violating the ordinance, it is an action to prevent the Board from enforcing that part of the ordinance which forbids the driving of cattle below Fortieth Street. This case relates solely to driving, and number two solely to slaughtering. The former is by the Board, to recover a penalty for slaughtering; this, by the butcher, for an injunction restraining the Board from preventing the driving of cattle from Fortieth Street to his place of business in Fourth Street. The decision was in favor of the Plaintiff, and the Defendants appeal to this Court.

Case number four arises on the same state of facts, and relates to the same order as case number one; but it is a suit by the butcher against the Board to obtain an injunction to prevent the Board enforcing its order, forbidding slaughtering at the place to which the order relates. The case differs from number one only at the point where the Plaintiff states his claims and demands his remedy. The Board found the same facts as to the business being "dangerous to health," made the same order, and gave the Plaintiff the same opportunity for a hearing, which he declined, as in case number one. It appears that the record of the decision and proceedings of the Board are preserved among its records. The decision of the General Term was in favor of Heister, and the Board of Health bring their appeal to this Court.

*D. B. Eaton* and *George Bliss* for the Appellants.

*M. V. B. Wilcoxson* for the Respondent.

*Ira Shafer* and *John H. Reynolds* for other butchers in the same situation with the Respondent.

HUNT, Ch.J.—The first point made in the cases before us is, that the act establishing the Metropolitan Board of Health is in violation of the second section of the tenth article of the Constitu-

tion of this State. That section is in these words: "All county officers whose election or appointment is not provided for by this Constitution, shall be elected by the electors of the respective counties, or appointed by the Boards of Supervisors, or other county authorities, as the Legislature shall direct. All city, town, and village officers whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns, and villages, or of some division thereof, or appointed by such authorities thereof as the Legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this Constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct." This provision has been before this Court on several previous occasions, and certain positions in relation to it may be considered as settled. Its plain meaning, that all the local officers referred to, whose offices were in existence at the adoption of the Constitution, shall be elected or appointed by the local authorities of which they are the representatives, has been fully sustained. So it has been held, that, to change the name, or to divide up and partition the duties among several, or to take parts of the duties of several offices and combine them in one, will not be permitted. If the offices in question are county or city offices, and were in existence at the adoption of the Constitution of 1846, it is not competent to vest the appointment of the incumbents in the Governor and Senate. It belongs exclusively to the local power to fill the offices, either by election or by appointment, as the Legislature may direct (The People v. Draper, 15 N. Y. 532 ; The People v. Raymond, 37 id. 428 ; The Mayor v. The Board of Police and Acton, —— ——).

As early as 1796, and by repeated statutes, from that time down to the adoption of the Revised Statutes, in 1830, the duty of attending to the health of the city, to cases of infectious disease, to vessels from unhealthy ports, to establishing and regulating slaughter-houses, has been given to, and exercised by, the Mayor of the city of New York, the Mayor, Aldermen, and com-

monalty thereof, Commissioners of Health, Health Wardens for the city, or some other local officers of that city (3 Greenl. ed. Laws, ch. 38, p. 305 ; 1 R. L. 1813 ; Laws 1850, ch. 275).

If the act of 1866 (ch. 74), which we are considering, was an act for the regulation of these subjects in the city and county of New York alone, it would be difficult to sustain it, under the decisions of this Court. The act commences as follows: " So much of the territory of the State of New York, and of the cities, villages, and towns thereof, as now composes the Metropolitan Police District of the State of New York, shall constitute, and is hereby declared, a district to be known as ' The Metropolitan Sanitary District of the State of New York.' " By the act of April 15, 1857, " To establish a Metropolitan Police District, and to provide for the government thereof" (ch. 569), the counties of New York, Kings, Westchester, and Richmond were united in a district, to be called " The Metropolitan Police District of the State of New York." The district over and upon which the powers of the newly created authority now before us are to be exercised, consists, therefore, of the four counties of New York, Kings, Westchester, and Richmond.

In The People *v.* Draper (supra), it was held, that the Legislature may establish new civil divisions of the State, embracing the whole or parts of different counties; and that, when so established, the provision of the Constitution under consideration, relative to county officers, is not applicable to such district. It was distinctly stated, in the opinions delivered in that case, that the offices which were affected by the act of 1857 were county offices, and that, if the district over which the new Commissioners were appointed had consisted of the county of New York alone, the act could not have been upheld. The validity of the act was sustained upon the ground that the Legislature had authority to create new civil divisions of the State, embracing more than one county, for purposes of temporary or permanent civil government ; not impairing, however, the county organizations, and that officers over such newly created district could legally be appointed by the Governor and Senate. That case is decisive of the validity of

the present act. ·It is not in the least shaken, but sustained and confirmed by the other cases more recently decided in this Court. The same distinctions are there recognized, and the same principles are upheld (The People *v.* Metropolitan Police, 19 N. Y. 188; 26 id. 316; The People *v.* Pinckney, 32 id. 377; Metropolitan Board *v.* Barrie, 34 id. 657). There is, therefore, no objection to the constitutionality of this act, as being in conflict with the provisions of section two of the tenth article of the Constitution of this State.

It is further objected that the act violates the second section of the first article of the State Constitution, which declares that "the trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever," and the sixth section of the same article, which provides that "no person shall be deprived of life, liberty, or property without due process of law." The argument on this point has been conducted by Mr. Heister's counsel, chiefly upon the allegation that, on the question of nuisance or no nuisance, the party complained of had a right·to the opinion of a jury, before his rights could be finally disposed of. It was admitted on the argument by the additional counsel, that a Court of Equity could give final judgment without calling in a jury. It will be observed that in each of the cases now before us, it was alleged and decided that the proceeding was "dangerous to the public health." This was in addition to the charge that it was a nuisance.

No one has been deprived of his property or of his liberty by the proceedings in question. The Commissioners have provided that cattle shall not be'driven upon certain streets, except at certain hours of the day. They have also provided that the ·business of slaughtering cattle shall not be carried on in the city of New York south of a designated line. These regulations take away no man's property. If Mr. Heister owns cattle, his ownership is not interfered with. He may sell, exchange, and traffic in the same manner as any other person owning cattle may do. If he owns a slaughter-house, his property remains intact. He may sell it, mortgage it, devise it, or give it away, and may use it just

as any other man, or all other men in the State combined may do.   Simply the health regulations of the district operate upon his cattle and his slaughter-house in the same manner that they do upon live property owned by all others, and the use of the streets for dangerous purposes, and the prosecution of a business dangerous to the public health, are regulated by the ordinances in question.   This practice is not forbidden by the Constitution, and has been recognized from the organization of the State government, and is to be found in nearly every city or village charter which has been granted by the Legislature.

Nor, in my judgment, is there any greater plausibility in the argument that the act violates the right of trial by jury. The Constitution recognized the fact that there were certain classes of cases which had not been and need not be tried by a jury.   Thus, it does not say that the right of trial by jury shall exist in all cases, but in all cases "in which it has been heretofore used."   Equity cases, certain attachment proceedings, and proceedings under the absconding debtors' acts, references, appraisals of real estate taken by corporations, and many others, were well understood to have been usually determined by another tribunal, and were allowed to remain undisturbed (Sands v. Kimbark, 27 N. Y. 147).   Passing by the question whether a Court of Equity, of itself, may determine the question of nuisance or no nuisance without the aid of a jury, on which question those appearing for the Respondent do not agree, and passing by the point that any individual or body may abate a nuisance, provided he commits no breach of the peace, I hold it to be clear, that in questions relating to the public health, where the public interests required action to be taken, a jury had not been the ordinary tribunal to determine such questions prior to the adoption of the Constitution of 1846.   As early as 1784 an act was passed "to prevent the bringing in and spreading of infectious distempers in this State" (1 Greenl. ed. 117); and in 1794 (3 Greenl. ch. 53, p. 144) it was amended so that "the Governor, and, in his absence, the Mayor of New York, was authorized to do every other act and thing which may be thought necessary to carry into effect the

12

object of this act." No jury was had or was provided for. In 1796 (3 Greenl. ch. 38, pp. 305, 308), the Legislature enacted that " it shall be lawful for the Mayor, etc., in Common Council convened, from time to time, as they shall judge advisable, to make by-laws and ordinances for filling up or raising lots, . . . . cleaning and scouring streets, alleys, sinks, . . . . and for regulating all manufactures of soap, candles, glue, leather, and all other manufactures, and all works, trades, or business causing noxious effluvia or vapor, in respect to the manner in which the places or spaces within the limits of said city, where such manufactures, works, trades, or business shall be carried on or used, and whereby to preserve general health in the city, . . . . under such penalties of fines and forfeitures as shall be reasonable." See also the act of March 30, 1798 (Andrews' Laws, p. 403, as cited by Mr. Eaton); the act of April 9, 1804, and 2 Revised Laws of 1813 (p. 534, § 25); 1 Revised Statutes, 1830 (p. 441, § 3), authorizing the Mayor or Commissioners to remove or destroy anything that may be dangerous to the public health. The laws of the same character, relative to the city of New York, in 1850 (ch. 275, p. 597), contained provisions more extensive and more rigid than those now under consideration. The amended charter of the city of Brooklyn (Laws 1854, ch. 384) gives the Common Council power to compel the owner or occupant of any slaughter-house to cleanse, remove, or abate the same, from time to time, and as often as may be necessary for the health or comfort of the inhabitants. These acts show that, from the earliest organization of the government, the absolute control over persons and property, so far as the public health was concerned, was vested in boards or officers, who exercised a summary jurisdiction over the subject, and who were not bound to wait the slow course of the law, and that juries had never been used in this class of cases. The Governor, the Mayor, health officers under various names, were the persons intrusted with the execution of this important public function; and they were always empowered to act in a summary manner. Scarcely a year passes, or did pass prior to 1846, in which the Legislature did not charter some city or village, and

give to the local powers full authority, by their own action, and in their own way, to regulate, abate, or remove all trades or manufactures that might be by them deemed injurious to the public health. I have examined the statutes from 1832 onward, and find that scarcely a year passed in which these powers were not given to many cities or villages, by original authority or by amendments to their charters. I see, among the laws of the session just closed, several of the same character—among them, one to incorporate the village of Gouverneur, which gives the trustees full power to prohibit and abate nuisances, to compel the owners of a butcher's stall, sewer, privy, or other unwholesome thing, to cleanse the same, or cause the same to be removed, or otherwise disposed of, as may be necessary for the public good. (See also 15 Wend. 262.)

I do not doubt, either, that, upon general principles of law, and considering them as nuisances, the right of regulating the use of the streets by droves of cattle, and of removing houses for their slaughter from particular locations, as the public health required, was within the power of the Common Council or other local authorities, independently of the statute by which it was given (Van Wormer *v.* Albany, 15 Wend. 262; 3 Black. Com. *b*). It would be difficult, then, to say that the power given by this act of 1866 was a new exercise of authority, not allowed by the Constitution, or that it was a case in which a jury trial had theretofore been had.

Before leaving the consideration of this constitutional objection, it ought, perhaps, to be observed that the act provides for notice to the party affected, before the judgment finally passes against him. In substance, the Board, upon the evidence before it, determine that a prima facie case exists requiring their action. In the present instance, after such preliminary determination made, notice was given to Heister of what had been done, and that he could be heard upon the subject, with his witnesses, at a time designated. This gave the same protection to all his rights as if notice had been served upon him before any preliminary proceedings had been taken. He refuses to litigate before the Board the question whether his pursuit is dangerous to the public health,

but places himself upon their want of power over the subject. He cannot complain now that their judgment upon the facts is to be held conclusive upon him.

It is further insisted that the act in question is invalid, in that it confers judicial power upon the Metropolitan Board of Health. If I understand this argument, it is this: the Constitution says (art. 6, § 18): "All judicial officers of cities and villages, and all such judicial officers as may be created therein by law, shall be elected at such times and in such manner as the Legislature may direct," and as judicial power is here given to officers who are not elected, but are appointed by the Governor and Senate, the appointment is invalid.

The same argument is drawn from the general distribution of legislative, executive, and judicial powers in the Constitution, and the provision that the Legislature may establish inferior local Courts in cities, and that they shall be uniform, except for the cities of New York and Buffalo.

These arguments are earnestly pressed, and, when the case occurs where they necessarily arise, will be carefully considered and decided. In my opinion they do not now arise.

The power to be exercised by this Board upon the subjects in question is not judicial in its character. It falls more properly under the head of an administrative duty. It is no more judicial than the action of commissioners of highways in laying out or refusing to lay out a highway, or in determining the necessity of rebuilding a bridge in their town. It is no more judicial than is the action of commissioners of excise in the country, or of the Metropolitan Police Board, who, as Commissioners of Excise, discuss the question of whether a license shall be granted to an individual to keep an inn or to sell spirituous liquors. The qualifications of the person are scanned; the place proposed for the sale of liquors, and whether the applicant has the accommodations required by law, the public necessity or propriety of such permission to sell, are examined into and determined. But such powers have never been held to be of a judicial character. The power of the Metropolitan Board to act upon the latter subject has been

distinctly sustained in this Court (Metropolitan Board *v.* Barrie, 34 N. Y. 657).

It does not affect this or any point in the case, that the Board have made these ordinances for the city of New York alone. They have full power to make them for the other parts of their district when and as the necessities of the case may require.

That the Legislature possess the entire control over the streets of the city of New York, and that it can delegate. such portions of its authority to the local organizations, and in such measure, form, and under such restrictions as it thinks proper, has been frequently decided (Darlington *v.* The Mayor, 31 N. Y. 164; People *v.* Kerr, 27 id. 188).

The judgment of the General Term in each case should be reversed, and judgment ordered for the Appellants; and in number two, judgment should be entered for the two penalties demanded in the action.

WOODRUFF, MASON, BACON, and DWIGHT, JJ., concurred.

MILLER, J. (dissenting.)—The appeals in the cases now before us, present for our consideration the constitutional validity of the act of the Legislature creating a Metropolitan Sanitary District and Board of Health, and of several provisions of said act, and of the act amending the same passed in 1866 (Sess. Laws of 1866, chaps. 74, 686). Each of the cases involves questions of grave moment and of paramount importance to the public, and should be examined and considered with calm deliberation, and with a proper appreciation of the interests involved.

It is claimed that, so far as the acts of the Legislature organizing the Metropolitan Board of Health confer power to legislate, they conflict with the Constitution, and are void. At the time when the Constitution of 1846 was adopted, the several Boards of Health in the cities and villages of this State were vested with authority, and it was made their duty " to make regulations, in their discretion, concerning . . . . the suppression and removal of nuisances, and all such other regulations as they shall think necessary and proper for the preservation of the public health " (1 R. S., 2d ed.

445, § 27). This law was in force at the time when the Constitu
tion went into operation; and in pursuance of the powers thus con-
ferred upon them, a code of ordinances had been passed by the
Board of Health of the city of New York, which consisted of the
Mayor and Common Council of that city (Sess. Laws of 1823, ch.
71; id. of 1850, ch. 275; 2 R. S., 5th ed. part 1, ch. 14), which
was in operation when the new Board of Health was organized.
By the acts organizing the new Board, which are now submitted
to our consideration, they succeeded to the powers vested in the
local authorities. By the twentieth section (Sess. Laws of 1866,
ch. 686), the power to make rules and regulations was conferred
upon them, and they were vested with extensive legislative powers,
entirely local in their character. They possess the power to cre-
ate offences, and to enforce the ordinances made by them by a
penalty not exceeding fifty dollars for each offence. By section
thirty (Sess. Laws of 1866, ch. 74), it is declared that "Whoever
shall violate any provisions of this act, or any order of said
Board, made under the authority of the same, or any by-law or
ordinance therein referred to, or shall obstruct or interfere with
any person in the execution of any order of said Board," etc., " or
wilfully omit to obey any such order, shall be guilty of a misde-
meanor, and be liable to be indicted and punished for such of-
fence." It also provides that "any person, corporation, or body
which may have wilfully done or omitted any act or thing which
is in this act, or any law or ordinance therein referred to, de-
clared to be, or to subject the party guilty thereof to punishment
for a misdemeanor, shall, in addition thereto, be subject to a
penalty of $250."

In pursuance of the provisions of the twentieth section, above
cited, a large number of rules, regulations, and ordinances have
been passed, embracing a variety of subjects relating to the pre-
servation of the public health.

At the time when the Constitution went into effect, and prior
to the passage of the act in question, the Boards of Health, in
their several localities, were the only bodies who enjoyed the
power of local legislation in regard to the public health. They

had extensive and almost unlimited powers upon this subject (1 R. S., 2d ed. ch. 14) ; and severe penalties were imposed for a violation of any regulation made by them (id. p. 446, § 28 ; Laws of 1832, ch. 333).   As we have seen, the Constitution recognized the validity of these laws, and the Legislature had full power and authority to restrict these powers ; but they had no right to confer them upon other and different bodies, holding their offices by State authority, and not elected by the people or appointed by the local authorities within the limits of whose jurisdiction they were authorized to exercise their functions, within the provisions of section two of the tenth article of the Constitution.

By the first section of the third article of the Constitution, the legislative power is vested in the Senate and Assembly ; and thus the Legislature was authorized to enact and to repeal laws in reference to the public health, without any restriction or limitation whatever.   But while the Legislature can confer power, in a restricted sense, upon public bodies which the Constitution recognized, at the time of its adoption, as authorized to receive such power, there is nothing in that instrument which sanctions a transfer of such power to public officers, or to any body who hold their offices by virtue of appointment from the Governor and Senate.   It cannot take away legislative authority delegated to localities, and confer it upon officers created by virtue of its own enactments.   The Common Councils of cities, the trustees of villages, and the electors of towns when assembled in town-meeting, possessed and enjoyed certain powers and privileges, in this respect, when the Constitution took effect.   These may be changed, modified, or repealed ; but they cannot be transferred to bodies or persons not recognized by the Constitution.   The Constitution confers certain legislative powers on local organizations.   By article eight, section nine, it provides for the organization of cities and villages.   By article three, section seventeen, it authorizes the Legislature to confer upon Boards of Supervisors certain powers of local legislation.   Considering the laws as they existed when the Constitution was adopted, conferring local legislation upon

Boards of Health, that instrument must be regarded as recognizing the powers thus conferred; and the absence of power to confer such authority upon new officers must, I think, be considered as a prohibition to go beyond this. As already stated, there were certain powers existing when the Constitution took effect, and certain other powers conferred directly by the Constitution. It would therefore seem to follow, by implication, that the Legislature was prohibited from granting powers of local legislation to any bodies which were not thus recognized. In The People *v.* Draper (15 N. Y. 532), Judge Denio, in discussing the question of power conferred by the Constitution, says that "Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision. The frame of the government; the grant of legislative power itself; the organization of the executive authority; the erection of the principal Courts of Justice; create implied limitations upon the law-making authority, as strong as though a negative was expressed in each instance. But, independently of these restraints, express or implied, every subject within the scope of civil government is liable to be dealt with by the Legislature."

The provisions of the Constitution defining legislative powers are evidently intended as restraints upon the authority of the Legislature, and to prevent the exercise of such powers by conferring it upon officers neither elected by the people nor appointed by the local authorities affected. Clarke *v.* The City of Rochester (28 N. Y. 606) holds that the Legislature cannot commit the power of enacting laws to any other body than itself, not even to the electors of the State. The learned Judge who wrote the opinion says: "While general statutes must be enacted by the Legislature, it is plain the power to make local regulations, having the force of law in limited localities, may be committed to other bodies, *representing the people in their local divisions*, or to the people of those districts themselves." It is then only to local Boards or Councils in cities, in villages, and to authorities recognized by the Constitution, that this power can be committed. No such authority is sanctioned as to any board of officers inde-

pendent of these provisions, and it would be in direct conflict with the Constitution so to hold.    For if such power can be transferred and granted to a board of officers of any kind, then there is no limit to legislative power, and it might upon the same principle, if not with the same propriety, be conferred upon a single individual, which could never have been intended.    The same .doctrine is fully endorsed and ·sustained in The People *v.* Acton (48 Barb. 533).    This case involved the constitutionality of the twelfth section of an act of the Legislature, passed in 1867, which invested the Board of Metropolitan Police with all the powers and duties conferred by law upon the Mayor and Common Council, and all other boards and officers of the city · of New York (except the Metropolitan Board of Health), in respect to the licensing of theatres, places of amusement, &c., and authorized such Board to alter, amend, modify or repeal all ordinances in force at the time of the passage of the act, concerning the persons and matters mentioned in said section.    It was held in this case that the Legislature cannot confer the power to discharge duties and make regulations, to pass laws relating thereto, upon State officers, no matter how appointed, whether by the Governor and Senate or the Legislature.    This case is directly in point, and the judgment of the General Term therein was affirmed upon appeal to this Court.    The opinion has not been published or furnished, and, therefore, we have no means of knowing the precise grounds taken, although it is fair to assume that the Court concurred with the grounds taken in the Supreme Court.

    It is said, in reference to the case of The People *v.* Acton, that, so far as it is applicable to the cases before us, it was decided upon the ground that the new power taken from the local officers of New York city was conferred on the Police Board, to be solely exercised by the latter in said city.    I do not so understand that decision.    Ingraham, J., in his opinion in that case, says: " The Constitution provides that the Legislature may confer upon the Board of Supervisors powers of local legislation.    The granting of such a power to the Legislature naturally involves the supposition that they could not otherwise give such a power.    If they could

not give any such power to Boards of Supervisors without a constitutional provision, I am at a loss to see any authority to bestow such a power on a Board created by themselves, and not a recognized body in the Constitution. The powers given to them are to legislate in regard to local matters." He cites Barto *v.* Himrod (4 Seld. 483) as an authority for the principle that laws could only be enacted by the legislative bodies to which the legislative power is committed by the Constitution; and remarks: "I see no good reason why the Legislature should be allowed to commit to the Board of Police the power to legislate, when they could not even submit to the people the question whether they would approve of a law." If the Legislature could not delegate such a power to the Board of Police, how could it be done to any other board of officers similarly constituted and organized? It will be perceived that the learned Judge does not place his opinion upon the ground that the powers conferred are to be solely exercised within the city, but upon the broad ground that legislative powers cannot be conferred upon a Board created by the Legislature itself, which had no existence when the Constitution was adopted, and which the Constitution did not recognize. Nor do I understand that the opinion of Justice Smith sustains any such doctrine as is claimed. But, even conceding that there may be some force in the suggestion made as to the effect of that decision, can it, in any way, aid in sustaining the constitutionality of the law in question? The order of the Board of Health, for a violation of which a penalty is claimed, was entirely local. The ordinance claimed to have been violated, so far as it is in controversy here, was local in its operation, and related to the city of New York; and the injunctions sought have reference to the local action of the Board of Health as to New York city alone. Here, then, is the exercise of legislation entirely local in its character.

The result of the examination I have bestowed upon the question discussed brings my mind to the inevitable conclusion, that the provisions of the act to which I have adverted confer legislative powers upon the Board of Health in violation of the Constitution. They invade the powers guaranteed by the Constitution to

local authorities, and confer them upon officers who hold their offices by appointment from the Governor and Senate, and who are not chosen by the electors of the city of New York, or appointed by any body so elected, and who do not hold from any authority which invests them with the prerogatives of local legislation.

It matters not, I think, that the Board of Health claim to act in a more extended territory than the city of New York. Nor does it, in my opinion, contravene the principle decided in The People *v.* Draper, to hold that legislative powers cannot be conferred; for no such powers were originally conferred upon the Police Commissioners as are contained in this act, and when the Legislature attempted to confer those of a similar character it was decided that it was unauthorized and in violation of the Constitution (People *v.* Acton, 48 Barb. 528).

An objection is taken to the fourteenth section of the act (chap. 74, Sess. Laws of 1866) upon the ground that it confers judicial powers in violation of the Constitution. The first part of the section provides that "Whenever any building, erection, excavation, premises, business pursuit, matter or thing, or the sewerage, drainage, or ventilation thereof in said district shall, in the opinion of said Board," &c., "be in a condition or in effect dangerous to life or health, said Board may take and file among its records what it shall regard as sufficient proof to authorize its declaration, that the same, to the extent it may specify, is a public nuisance, or dangerous to life or health; and said Board may thereupon enter in its records the same as a nuisance, and order the same to be removed, abated," &c. The order is to be served before execution, and the Board have power to rescind, modify, and reaffirm the order, and to direct the execution of the original, or of a new or modified order, as it may determine. By a subsequent provision of the same section, the Board, upon what it may regard as adequate proof of a violation or resistance of any order, law, or ordinance, may issue a warrant for the arrest of any offender. These provisions confer complete judicial authority and power to act and to pronounce judgment in the matter, more extensive and summary in its character than the powers enjoyed by any tribunal of

justice or officer known to the law.   I am inclined to think that this provision is in conflict with section eighteen of article six of the Constitution, which provides that " All judicial officers of cities and villages, and all such judicial officers as may be created therein by law, shall be elected at such times and in such manner as the Legislature may direct."   By section fourteen of the same article: " Inferior local Courts of civil and criminal jurisdiction may be established by the Legislature in cities;" but under section eighteen, as we have seen, all officers of such Courts must be elected by the people.

There is no authority in the Constitution for the appointment of judicial officers by the Governor, except in cases of vacancy ; and all other judicial officers must be elected as the Constitution provides.   As the Board of Health are appointed, I do not well see how the Legislature can confer upon them any such authority as the act provides.   In Sill *v.* The Village of Corning (15 N. Y. 297) it was held that the Constitution has not deprived the Legislature of the power to provide for the organization of local Courts of civil and criminal jurisdiction in villages.   The question was entirely different from the one presented in this case, and the officer provided for was to be elected, which is not the case here. Conceding, then, that local Courts may be established, the officers of such Courts must be elected in accordance with the Constitution.

The provision of the act referred to does not call upon the Board to act judicially in the discharge of certain duties which are imposed upon them, but vests them expressly with specified judicial powers, and, therefore, cannot be sustained.   It is said that judicial duties may be imposed on a Board of local commissioners which are not elected by the people, or appointed by an officer or a body elected by the people, and we are referred to two cases in support of this position.

In Commissioners of Pilots *v.* Vanderbilt (31 N. Y. 270), an action was brought for a penalty under the act to prevent encroachments and obstructions in the harbor of New York, and to authorize their removal, and it was decided that the giving of notice to remove all obstructions was in the nature of a judicial act, calling for the exercise of judgment and discretion.   This is

not in any way analogous to a case where power is conferred to pronounce judgment, and to issue process, the same as a regularly constituted Court, and to execute that process. In Commissioners *v.* Clark (33 N. Y. 251), no question of this nature appears to have been raised. There is no precedent in the books for the exercise of any such judicial power outside of the Courts of law recognized by the Constitution, and I think it is entirely unauthorized, and in violation of its plain provisions.

The first entitled action is brought to recover a penalty for a violation of an order of the Board, made under the first subdivision of the fourteenth section of the act, and presents the question whether the Board of Health had a right to make and enforce an order abating the business of slaughtering animals, at the Defendant's place of business, as a public nuisance, and as dangerous to life and health. The power thus exercised is in the nature of, if not entirely a judicial act. And conceding that such a power may be conferred, the act of the Board in making the order in question was, I think, in violation of the Constitution of this State, which guarantees that no person shall be deprived of his "property without due process of law" (Const. of N. Y., art. 1, § 6). The order of the Board pronounced condemnation of the Defendant's business without any sort of a preliminary notice, and with no opportunity to be heard and to try the question before the rendition of judgment. The Board never acquired jurisdiction over the person or the subject-matter before the condemnation was had, and a notice afterward did not remedy the difficulty, or give force and vitality to their proceedings. The judgment was either valid or invalid when it was pronounced, and, unless jurisdiction was then acquired, no subsequent act can give it validity or change its real character. It is certainly an unusual, an anomalous, and a remarkable proceeding, unknown to the ordinary course of practice in judicial tribunals, to pronounce judgment in the first instance, and then to call upon a party whose property has been condemned to vindicate himself before a tribunal which is already committed, by proof that the charge made and established by their judicial action is without foundation. More especially is such a proceed-

ing objectionable when it is tolerated and allowed without an affidavit to support the charge made, and the Board are vested with authority to act and to make an adjudication upon "what it shall regard as sufficient proof." Under this act, a communication dictated by malice or rivalry might be the effective instrument of destroying the property of a citizen, and inflicting a serious injury upon his reputation. And the officers invested with such power might, under the slightest pretext, and upon a groundless accusation, be the authors of the most mischievous consequences. Clearly this is not "due process of law," for no such power is ordinarily conferred upon any Court of law.

The provision of the Constitution which has been referred to means that no person shall be deprived of any of his rights or privileges, unless the matter shall be adjudged against him upon trial had according to the course of common law ; that it may be ascertained judicially that a person has forfeited his rights, a suit must be prosecuted and conducted according to the prescribed forms and solemnities for ascertaining guilt or determining title to property (Taylor *v.* Porter, 4 Hill, 147; Westervelt *v.* Gregg, 2 Kern. 202; Wynehamer *v.* The People, 3 id. 378; Embury *v.* Conner, 3 Comst. 511 ; The People *v.* Toynbee, 2 Parker, 514, 515, 526). And this must be done in the regular course of administration, through Courts of Justice (Rodgers *v.* Barker, 2 Kern. 13, 447, 454; Burch *v.* Newbury, 6 Seld. 374, 397 ; The People *v.* Corporation of Albany, 11 Wend. 539 ; Wynehamer *v.* The People, 3 Kern. 426). By the fourteenth section of the act, as we have seen, the Board of Health have authority, without notice to the party to be affected by their proceeding, by partial and hearsay evidence, to declare the property of a citizen a nuisance, dangerous to life and health ; and unless afterward satisfied by the owner that the judgment is erroneous and should be reversed, to affirm and ratify the order thus made. Such a proceeding is unknown to the proceedings in any Court of Justice, and there is no power, in my opinion, to delegate to a Board of Health the right to define what shall be a nuisance, or to make acts criminal which the law holds innocent. (Mayor, &c., *v.* The

Board of Health, 31 How. 395.)  It is no answer to views I
have expressed to say that the Legislature have the power to confer
upon the Board the right to do, and to make it their duty to do, what
every citizen has a right to do in his own motion; for the Board
seek to recover a penalty on the strength of their official action,
and by virtue of the order made by them, not as individuals, or
upon their responsibility as officers alone, but by virtue of an
act authorized and done in pursuance of an act of the Legislature.
They attempted to deprive a person of his property under the
provisions of this act, and to recover a penalty because that per-
son refused to obey an unlawful and unauthorized order.  If the
position is a sound one, that the Legislature have not the power
to confer the authority claimed to be exercised, then this feature
of the act is unconstitutional and void.  And if it be void, then
the adjudication made under this provision is without authority,
and can be attacked collaterally as well as in a direct proceeding
for that purpose.  It is a jurisdictional question, and such ques-
tions are always open for consideration.  This proposition is so
plain that it is unnecessary to cite authorities to sustain it.    It
follows, that the proceedings may be reviewed without a certio-
rari, and that the action for a penalty in the first action cannot
be maintained.

The second action, which is brought to recover penalties for
violations of an ordinance of the Board, presents the question as
to the validity of the ordinance; and as I have shown that the Board
does not possess legislative powers, the result is inevitable that the
action cannot be maintained.

In the third action which is brought against the Board, the
Plaintiff asks that the Board may be enjoined from enforcing the
ordinances prohibiting the driving and slaughtering of cattle, and
that it be declared void.  It is conceded by the case that the busi-
ness of driving and slaughtering cattle impairs the enjoyment of
life; that unhealthy exhalations are generated, and that a large
number of physicians pronounce the business dangerous to health.

In Catlin *v.* Valentine (9 Paige, 575), it was held that to consti-
tute a nuisance it is not necessary that a noxious trade or business

should endanger the health of the neighborhood.    It is sufficient if it produces what is offensive to the senses, and which renders the enjoyment of life and property uncomfortable.    (See also Brady v. Weeks, 3 Barb. 157.)    The Plaintiff virtually admits that his business is a nuisance, and asks the Court to interfere to prevent its abatement.    When the question of the existence of a nuisance is in doubt, the Court will grant an order restraining the Board of Health from abating it.    (See Rogers v. Barker, 31 Barb. 447; Mayor v. Board of Health, 31 How. 385; Shuster's case, not reported.)    But where it is entirely clear that a nuisance does exist, an injunction should not issue.    In this case, however, it is apparent that the ordinance is void, because the Legislature cannot delegate to the Board the power to legislate, and the judgment should be to that effect, but without an injunction.

In the fourth case, the question arises whether an injunction should issue to restrain the Defendants from enforcing the order made by them, declaring the business and premises of the Plaintiff a nuisance.    If I am correct in holding that the order was made without lawful authority, and is void for that reason, then the proceedings are null and void, and the Plaintiff is entitled to the relief demanded.    As I have already stated, the question is one of a jurisdictional character, and the party affected by the order is not confined to the remedy of a certiorari to test the validity of the order made.

Several other questions are presented, but as those already discussed dispose of the cases, it is not necessary to examine them. Upon the grounds already stated, I am of opinion that the judgment of the Court below should be affirmed in all except the third case, in which it should be modified in accordance with the views here expressed.

GROVER and CLERKE, JJ., concurred.

Judgment of General Term reversed in each case, and judgment ordered for the Appellants, with costs, and, in the case of number two, for the two penalties claimed.